No. 12,643.

## BRUCE ET AL. *v.* OSGOOD, TRUSTEE.

PARTITION.—*By Parol Agreement.—Enforcement of.—Possession.—Acquiescence.—Improvements.*—Where there is a parol agreement by tenants in common for partition, which is so far carried into effect that the parties take possession of the several shares allotted to them, or that one of the parties, with the knowledge and acquiescence of the other, goes into the exclusive possession of the share set off to him, making thereon valuable improvements, such partition is valid and enforceable, unless infected with fraud.

SAME.—*Arbitrators.—Second Award.—Evidence.*—Where the persons selected by tenants in common to make a division of land, in pursuance of a parol agreement for partition, report a division, which is mutually unsatisfactory, and the parties afterwards agree between themselves as to the share each shall have, and consent that the original arbitrators may report a division in conformity with the agreement, which they do, such report is admissible in evidence in support of the partition.

SAME.—*Attorney and Client.—Confidential Communications.*—Statements made by a client to an attorney for the purpose of being communicated and acted upon by the latter while conducting negotiations for the settlement of a controversy over the division of land between the client and another, are not such confidential communications as the attorney is forbidden to disclose in evidence.

From the Marion Superior Court.

*S. Claypool, W. A. Ketcham* and *J. P. Baker,* for appellants.
*A. C. Harris* and *W. H. Calkins,* for appellee.

MITCHELL, C. J.—This was a suit by Osgood, as trustee, against Bruce and wife, to quiet title to certain farm lands in Marion county, of which Bruce and Osgood were formerly tenants in common. The controversy involves the validity and efficacy of certain steps which were taken with a view to effect a partition. The questions arise on the evidence.

The facts seem to be, that Osgood and Bruce acquired title by deeds dated the 5th day of October, 1881, to two hundred and forty-two acres of land in Marion county. The interest of the former was in the proportion of an undivided

four-fifths, while that of the latter was an undivided one-fifth of the whole. The title was acquired as the result of a compromise of a certain pending litigation, and the compromise agreement pursuant to which the conveyances to Osgood and Bruce were made provided for the selection of three disinterested freeholders of the county to make partition of the land. Pursuant to this agreement, each of the common owners selected one, and the two thus selected designated a third person, the three being called commissioners, for the purpose of effecting a division of the land according to the respective interests of the owners.

Two of the persons agreed upon and reported a division, but the division proposed by the report, proving unsatisfactory, seems to have been disregarded by mutual consent. The evidence tends to show that, after some consultation between the parties and their attorneys, it was agreed that a tract containing $56\frac{72}{100}$ acres, described by metes and bounds, should be set off to, and accepted by, Bruce as his share, and that what remained of the two hundred and forty-two acres was to be awarded to, and accepted by, Osgood as equivalent to his four-fifths interest. Conveyances were to be made accordingly. There is evidence tending to show that, after this arrangement was agreed upon by the parties, they consented that the commissioners hereinbefore mentioned should report a division in conformity with this agreement. This was done accordingly.

The evidence tends to show that Osgood caused the division line between the several tracts, as thus allotted, to be fixed by a surveyor, and to be indicated by a turn-row, some seven feet wide, and that he went into possession of the part allotted to him, and made improvements of some value thereon. There is also some evidence that Bruce recognized the partition thus made by taking exclusive possession of the crops grown on the tract allotted him.

No deeds were interchanged, and later on Bruce repudi-

ated the alleged partition. There is no suggestion of fraud or inequality in the division.

The court below found that partition had been duly made, and adjudged that the titles of the respective parties be quieted according thereto.

In favor of a reversal, it is argued (1) that the evidence does not disclose an agreement to make partition, and that the second report of the commissioners was wholly unauthorized; and (2) that if there was an agreement to make partition it was void, not having been consummated by writing and the taking of possession, or of anything equivalent thereto.

That an agreement to make partition, which rests merely in parol, and under which no exclusive possession has been taken, is not enforceable, may be conceded. It is, however, a well settled doctrine of this and other courts, that a parol partition of lands between tenants in common, which has been carried into effect and consummated by possession taken by each of the share so allotted him, will be valid and binding. *Moore* v. *Kerr,* 46 Ind. 468 ; *Bumgardner* v. *Edwards,* 85 Ind. 117; *Hauk* v. *McComas,* 98 Ind. 460; *Savage* v. *Lee,* 101 Ind. 514; *Wright* v. *Jones,* 105 Ind. 17 ; *Wood* v. *Fleet,* 36 N. Y. 499 ; *Grimes* v. *Butts,* 65 Ill. 347 ; *Shepard* v. *Rinks,* 78 Ill. 188 ; *Long's Appeal,* 77 Pa. St. 151 ; Wood Frauds, section 229.

While it is true, that a partition which fully accomplishes the severance of the previously existing relation of tenants in common in the undivided whole, and vests the possession to an allotted part in each, is not such a transfer of title as will be affected by the statute of frauds (*Moore* v. *Kerr, supra ; Calhoun* v. *Hays,* 8 Watts & S. 127 ; *Mellon* v. *Reed,* 114 Pa. St. 647), it is, nevertheless, not to be understood that a parol agreement for the partition or exchange of lands, wholly unexecuted, is enforceable notwithstanding the statute. Knapp Partition, 466, 467.

Such an agreement is not enforceable unless it has been so far executed by taking possession, or by the performance of such acts in reliance thereon, as to entitle parties interested to invoke the jurisdiction of a court of equity for specific performance. When the contract has been followed by possession, in conformity with the partition agreed upon, since a court would have enforced an equitable partition without the consent of all the parties, a partition thus effected by agreement will be so far binding as to be enforceable, unless it is infected with fraud.

A partition effected by mutual agreement, followed by possession, is the equivalent of a decree in a court of chancery, which does not of itself convey or transfer the title, even after the allotment of the several shares of each of the parties to the proceeding. The transfer of title is a matter distinct from the partition, but the transfer may be compelled by a court of equity. *Gay* v. *Parpart,* 106 U. S. 679; *Buzzell* v. *Gallagher,* 28 Wis. 678.

Moreover, exclusive possession taken or retained by one tenant of the particular part allotted him, in pursuance of such an agreement, accompanied or followed by acts done in reliance thereon, such as making valuable improvements and the like, may be a sufficient taking of possession. *Savage* v. *Lee, supra; Hauk* v. *McComas, supra; Shepard* v. *Rinks, supra.*

The inquiry then comes to this: Was there an agreement for partition, and has that agreement been so far carried into effect as that the parties took possession of the several shares allotted them respectively, or that one of the parties, with the knowledge and acquiescence of the other, went into the exclusive possession of the share allotted him, making thereon valuable improvements?

Without stopping to rehearse the testimony in detail, it is enough to say, there was evidence from which the court may have found an agreement for partition. There was evidence

Bruce *et al. v.* Osgood, Trustee.

tending to show. that the partition was followed by possession. It clearly appears that the appellee took exclusive possession of the share set off to him, and that he erected fences, constructed drains, and expended more than one thousand dollars in making lasting improvements thereon. It also appears that the appellant took the crops from the share set off to him. There being no suggestion of inequality in the division, or fraud in procuring the agreement, there appears to be no reason why the partition should not have been, as it was, confirmed and enforced by the court.

Concerning the next point: It may be conceded, as the appellant contends, that arbitrators, who have made their final award in respect to a matter submitted to them, have so far exhausted their power over the subject-matter as not to be authorized, without a new submission, to make a second award. *Bayne* v. *Morris,* 1 Wall. 97 ; *Indiana, etc., R. W. Co.* v. *Bradley,* 7 Ind. 49.

The second report of the commissioners in the matter of the partition was, however, admitted in evidence on the assumption that the report was made by the consent of the parties, in consummation of the agreement of partition made by them. Upon that theory, it was not error to admit the report.

So in respect to the testimony of counsel, who conducted, in part at least, negotiations for a settlement after the first report of the commissioners was found to be unsatisfactory. The testimony given by them which was objected to, consisted of declarations concerning what the parties had authorized them to do in the matter of bringing about an adjustment of the controversy, and of statements that in what they did they acted in obedience to directions previously given by the parties represented by them respectively. Such declarations and statements are not the disclosure by an attorney of confidential communications from his client, made to him in the course of his business. Such statements are made by

the client for the purpose of being communicated and acted upon by the attorney. *Hanlon* v. *Doherty*, 109 Ind. 37, and cases cited.

We find no error. The judgment is affirmed, with costs.

Filed Dec. 23, 1887; petition for a rehearing overruled Feb. 18, 1888.