## MURRAY ET AL. v. MURRAY ET AL.

[No. 8,936. Filed May 22, 1916.]

1. APPEAL.—*Partition by Parol.*—*Conflict of Evidence.*—Where there is a conflict in the oral evidence as to the effect and extent of a parol agreement for partition the decision of the trial court upon such question is final, and it is not reviewable upon appeal. p. 142.

2. PARTITION.—*Parol.*—*Effect.*—A parol agreement for the partition of lands will be upheld and enforced where such agreement has been executed by the parties thereto taking possession of their respective severed portions. p. 143.

3. DEEDS.—*Merger of Oral Negotiations.*—As a general rule all oral negotiations leading up to the execution of the deed are merged therein. p. 144.

4. DEEDS.—*Merger.*—Where it is sought to have an agreement as to partition merged into subsequent deeds, the doctrine of "merger" can have no application where the estates created by the deeds are not equal to, or coextensive with, the estates created by the partition. p. 144.

5.  ESTATES.—*Merger of Legal and Equitable Titles.*—The intention of the party, expressed or implied, is the true test of whether there has been a merger, and where such merger, in the light of all the circumstances, would be disadvantageous to him, then the merger of an equitable estate with a legal estate will not be presumed. p. 144.

6.  ESTOPPEL.—*By Deed.*—A person can be estopped by deed only when such deed sets forth the precise fact upon which such an estoppel is to operate.   p. 145.

7.  ESTOPPEL.—*By Quitclaim Deed.*—No estoppel arises either from making or accepting a quitclaim deed, and both the grantor and the grantee may prove that no interest or estate was transmitted thereby.   p. 145.

8.  ESTOPPEL.—*By Deed.*—Where the defendants derived their title through a deed to their father and where there is no showing of fraud or mistake, they are estopped by that deed from claiming, under a partition proceeding prior thereto, any larger estate or interest than that expressed in their deed.   p. 147.

9.  ESTATES.—*Merger.*—Where defendants are claiming under an alleged partition made prior to the deed under which they derived their title and there was no evidence of a subsequent partition or a ratification of the alleged prior partition, a finding that the defendants take a larger estate than that described in their deed is erroneous.   p. 148.

From Hamilton Circuit Court; *Meade Vestal,* Judge.

Action for partition by Charles F. Murray et al. against Robert H. Murray et al. From a judgment for defendants, the plaintiff appeals.   *Reversed.*

*Shirts & Fertig,* for appellants.
*J. F. Neal and N. C. Neal,* for appellees.

HOTTEL, P. J.—Charles F. Murray, hereinafter referred to as appellant, his wife joining him, brought suit in the court below for partition of 61 acres of land in Hamilton county, viz.: The northeast quarter of the northeast quarter of section 1, township 17 north, range 6 east (hereinafter referred to as the south 40 acres), and the southeast quarter of the southeast quarter of section 36, same township and range (hereinafter referred to as the north 40 acres), except 19 acres off the north side thereof. In his complaint appellant alleges that

he is the owner of an undivided one-half of said real estate; that appellee Calvin G. Murray is the owner of an undivided one-sixth thereof, and that the other appellees are the owners of the remaining two-sixths in interests unknown to appellant. Ferdinand Murray and Mary Fern Lockwood filed an answer and a cross-complaint, in each of which they allege, among other things, that they and their coappellee Calvin G. Murray and appellant are each the owner of an undivided one-fourth in said south 40-acre tract; that about nineteen years previous appellant, his brother Calvin and their mother Maria owned all the real estate described in the complaint as tenants in common, and that they then entered into a mutual agreement to partition the same and for that purpose selected arbitrators, who set off to Calvin G., nineteen acres off the north side of the north 40 acres; to appellant, Charles F., the 21 acres remaining of the north 40 acres; and to said Maria the south 40 acres; that afterwards, on the......day of......, deeds were made to Calvin G. in confirmation of his title to the 19 acres, and immediately upon said division Charles F. and Maria accepted the partition so made, and each of them respectively entered into the full and exclusive possession of the portions thereof so assigned to them, and have since continued in exclusive possession thereof; that since such partition appellant exercised control and dominion over the 21 acres as sole owner thereof, paid the taxes thereon, received all the rents and profits therefrom and made improvements thereon; that since such partition Maria, until her death, exercised full control over the south 40-acre tract, receiving the entire rents and profits thereof; and all of said tenants in common fully accepted and acquiesced in the partition so made; that appellees, and each of

them, are ready and willing to execute any conveyance that may be necessary to confirm the title to the said Charles F. in the 21 acres; that by reason of the facts aforesaid, the 21-acre tract is not a proper subject of partition in this action.

Appellant answered the cross-complaint and replied to the answer by general denial. The other defendants to the complaint and cross-complaint were defaulted. There was a trial by the court and a finding that appellant is the owner in fee of the 21-acre tract, and that he, Calvin and appellees are the owners as tenants in common of the south 40-acre tract in the several proportions set out in the answer and cross-complaint and that the same should be partitioned. Judgment was rendered in accord with the finding. Appellant filed a motion for new trial which was overruled; commissioners were appointed to make partition and they reported the land indivisible, which report was confirmed and the land was ordered sold by a commissioner.

The ruling on the motion for new trial is relied on for reversal. The only grounds of this motion are: (1) The decision of the court is not sustained by sufficient evidence, and (2) it is contrary to law. It appears from the evidence and the facts agreed on at the trial that prior to 1886 Thompson Murray died seized of both 40-acre tracts above described, and a 46-acre tract adjoining on the west, and that all parties claim title through him. He left surviving him a widow, Maria Murray, and four sons, viz., Robert H., James, Charles F., and Calvin G. Murray, who, where hereinafter referred to by name, will be designated by their respective given names. After his father's death James sold his interest to Robert. It seems to have been understood by the mother and the other children that James intended to sell, not only his present interest

inherited from his father, but also his expectancy
in his mother's portion of the father's land and, it
having been suggested to the mother that the deed
from James to Robert was ineffective to convey
such expectancy, the mother, Maria, in March,
1886, executed quitclaim deeds, in which she
attempted to convey her one-third interest in her
husband's estate to her three sons with a reserva-
tion to herself of a life estate therein, viz., she
conveyed to Robert one-half of such one-third,
and to Charles and Calvin each one-fourth of such
one-third, in the entire 126 acres of which her hus-
band died seized. These deeds were recorded
September 30, 1886, but as one or more of them was
testamentary in character and inoperative they
were all afterwards ignored, and thereafter, at the
September term, 1886, of the Hamilton Circuit
Court, in a partition proceeding to which Maria,
Charles, Robert and Calvin were parties, the 46-
acre tract, not involved in this suit, was set off to
Robert in severalty as and for his share inherited
of his father's said land and the share purchased
of his brother James, and the land in controversy
was set off to Maria, Charles and Calvin, together.
This division was confirmed by the court.

In 1894 Robert and his wife executed a warranty
deed conveying all his interest in said land to
Samuel A. Patterson. On March 23, 1896, shortly
after the alleged parol partition referred to in ap-
pellee's answer and cross-complaint, Charles and
Maria conveyed by deed to Calvin the 19 acres,
the tract set off to him by the parol partition.
On the same day Calvin and wife conveyed by
quitclaim deed the 21 acres and the south 40 acres
to Maria and Charles. That is to say, they con-
veyed the undivided one-twelfth part thereof (de-
scribing the 61 acres as above) to Charles, and the

undivided two-twelfths part thereof to Maria. The deed reciting that it was made in connection with another deed of the same date for the purposes of partition. On March 25, 1896, Maria conveyed by deed to Robert the undivided one-half of the two-thirds part in value of the 61 acres, viz., the south 40 acres and the north 40 acres, except the 19 acres set off to Calvin; to Charles the undivided one-fourth of the two-thirds part in value thereof; and to Calvin the remaining one-fourth of the two-thirds part in value thereof. All of the deeds were recorded. In the deed last named Maria reserved to herself a life estate in the lands conveyed. Maria died January 2, 1913.

Robert Murray married Laura B. Patterson, the daughter of Samuel A. Patterson, and the latter by his last will devised to his daughter, Laura B., for and during her natural life, and at her death to her children or their descendants, the undivided 20 acres of the south 40-acre tract (describing it), subject to the life estate therein of Maria Murray. Ferdinand Murray and Mary Fern Lockwood, hereinafter referred to as appellees, are the children of Robert Murray and Laura B. (Patterson) Murray and claim the real estate in controversy under the will of their grandfather, Samuel A. Patterson.

On February 21, 1898, James A. Owen, sheriff of Hamilton county, executed to Samuel Patterson a deed in which it was recited that in 1897 Patterson had recovered a judgment in the circuit court of said county in an action therein against Robert N. Murray and Laura B. Murray for the sum of $1,213.41 and costs, etc., and a decree for the sale of all the interest, estate, right and title of said Murrays in and to real estate described therein as follows: "* * * and also the undivided one-half (1/2) of the undivided two-thirds (2/3) part

in value (subject to the estate for life of Mariah
Murray)" in said 61 acres (the decree describing
both 40 acre tracts and excepting therefrom the
nineteen acres off the north side of the north
40 acres). The deed then proceeds with the usual
recitals of a sheriff's deed and shows that the real
estate was offered for sale and was bid in by, and
sold to, said Patterson, and that in confirmance of
the sale the deed was executed.

It will be observed that Patterson's deed from
the sheriff for Robert's interest in said real estate
described it as the undivided one-half of the un-
divided two-thirds of the entire 61 acres, ignoring
any partition thereof, if there had been any; while
Patterson in his will treated the land as having
been partitioned and gives to appellee's mother for
life, and to appellees at her death, the undivided
20 acres, etc., being the half of the south 40 acres.

No question is made by appellant as to appellees
being the owners of the interest of Robert sold at
sheriff's sale, and it is in effect conceded that ap-
pellees' title, whatever it may be, came to them
through the deed of Maria Murray to Robert H.
Murray, the sheriff's deed conveying the real
estate of Robert to Patterson, and the latter's
will, the only contention in the case being whether
appellant is entitled to the 21 acres and an un-
divided one-fourth in the 40 acres as claimed by
appellees and adjudged by the trial court, or whether
he is entitled to an undivided one-half in the 61
acres as claimed by appellant.

Appellant admits in effect that there was a verbal
agreement of partition between him and Calvin
and their mother, but that the agreement was
limited to the partition and severance of the 19
acres set off to Calvin, and that there was no under-
standing or arrangement whereby the remaining

61 'acres held by him and his mother should be partitioned or divided between them; but that they continued to hold the 61 acres in common, the mother holding two-thirds and he, one-third; that the only arrangement between them was one as to the division of crops, whereby he took the crops off the 21 acres; the mother, off the 40 acres, both occupying the buildings and paying the taxes according to their undivided interests. It is further contended in effect by appellant that, though in fact there had been such verbal partition between him and his mother, the uncontradicted evidence shows that it was just before the making of the deeds referred to, *supra,* as made in March, 1896; that all oral negotiations, if any, for the partition of the land between appellant and his mother, made prior to, or at the time the 19-acre tract was set off to Calvin, were merged in the deeds afterwards made by the parties whereby they then expressly and respectively conveyed such lands among themselves according to their interests, as they then understood and intended them to be; that such deeds show that partition of the 61 acres, if ever made, was ignored and abandoned, and that by such deeds all parties thereto or those claiming thereunder are estopped from asserting any parol partition other than that recognized by the deed to Calvin of the 19 acres set off to him; and that such parties are estopped from asserting any title or interest in said land different from that expressed in said deeds. It is further insisted by appellant that the title asserted by appellees is a legal title and that they can not recover on proof of an equitable title, citing *Bruce* v. *Osgood* (1887), 113 Ind. 360, 363, 14 N. E. 563; that a *"parol partition,* where possession under it has not been held sufficiently long to justify the presumption of a deed,

as a general rule, *confers no legal title*, but either co-tenant can compel the other to convey the legal title in accordance with the terms of the partition, and such conveyance, when made, unless otherwise intended will relate back to the time of the parol partition."

In answer to appellant's contention it is insisted by appellees, in effect, that there is evidence showing that there was in fact a parol partition of the real estate in controversy as set up in their answer and cross-complaint; that the parol partition was fully consummated at the time of the making of the deed in March, 1896, by said Maria to Robert, and prior to the making of said sheriff's deed to Patterson, and prior to the will of Patterson; that these latter instruments should be construed and interpreted in harmony with such partition and not permitted to overthrow or defeat it; that in any event appellant has not pleaded an estoppel by deed; that there is no question of title in issue in the case, and hence that the defense of estoppel by deed can not be considered because it is not pleaded; that if the court should consider that there is a question of title involved and should consider the defense of estoppel that, for the reasons above stated, the certainty required in an estoppel is not manifest from the deeds; that the deeds are not in fact clearly inconsistent with, and antagonistic to, the parol partition; that as against any estoppel resulting from any apparent antagonism between the deeds and the partition under the parol agreement, appellees are entitled to the benefit of an estoppel *in pais*, viz., that appellant and his mother each continued in possession of the respective tracts set off to each, separately farmed the tracts, and took the grain raised thereon continuously up to the death of the mother; that appellant, after the

death of the mother, continued to recognize such partition and accepted and received his portion of the rents of the farm in accord therewith; that on account of such recognition of, acquiescence in, and ratification of, said parol partition, appellant should be bound thereby and estopped from asserting any different title or interest in said land.

As affecting such respective contentions of the parties there is oral evidence in the record showing, or tending to show, that the verbal agreement of partition, under which appellant admits that the 19-acre tract was set off to Calvin, also provided for a partition between appellant and his mother of the remaining 61 acres now sought by appellant to be partitioned; that, pursuant to such agreement, the parties selected to make such partition divided the north 40 acres into two separate tracts of 19 and 21 acres, respectively, leaving the south 40 acres for the mother; that after such division was made Calvin agreed to give appellant his choice of the 19 acres and the 21 acres, and that appellant then in the presence of the parties making such partition selected the 21-acre tract; that continuously thereafter until the mother's death, appellant and the mother took the crops from said respective tracts so separated and set off to them; and that in the year following the death of the mother the crops were likewise divided between appellant and the parties hereto in accord with said partition. On the other hand appellant testified in effect that the agreement made between him, Calvin and the mother was made for the sole purpose of allowing Calvin to have his part set off to him without court expense; that it was never understood or agreed that there was to be any partition between appellant and the mother; that appellant did not select either partitioner, was not present when the parti-

tion was made, and did not select or accept the 21-acre tract as his portion of said land; but that he afterwards agreed to the partition in so far as it set off to Calvin the 19-acre tract; that to carry out and make effective such parol partition the mother and children met at the office of Fertig & Alexander, attorneys at Noblesville, and there gave to such attorneys certain data for the preparation of the deeds mentioned, *supra,* as made in March, 1896; that said attorneys then made a memorandum of the data from which they prepared said deeds, which was turned over to appellant and has since been retained by him, which memorandum was offered in evidence and contains all the data affecting the title and interests of the parties herein to said real estate substantially as above set out and is in exact accord with said several deeds made after the verbal partition, viz., the deeds, *supra,* made in March, 1896.

It will be seen that as to the effect and extent of the parol agreement for partition, and the partition made thereunder, there is a conflict in the oral evidence, and under the well-recognized rules of this court the decision of the trial court upon such question is conclusive on this court. The question, therefore, which we are required to determine is as to the effect of such partition upon the question here involved when considered in connection with the several deeds affecting such question, and especially the deed through which appellees assert title. We deem it unnecessary to go into the question whether the estoppel by deed claimed by appellant should have been pleaded. It is sufficient to say that, as the record comes to us, the evidence is all before the court without objection. The substance of the contents of the deeds was admitted as a part of the

agreed statement of facts, and the only questions which we are asked to determine is whether the evidence is sufficient to sustain the decision of the trial court, and whether such decision is contrary to law.

It is well settled in this State that a parol partition of lands that has been consummated by the severance of the lands and by the respective 2. parties to such agreement taking possession of the respective severed portions set off to them will be upheld and enforced by the courts. The statute of frauds may stand in the way of an enforcement of an unexecuted parol agreement for the partition of lands, but such agreement is enforceable if "it has been so far executed by taking possession, or by the performance of such acts in reliance thereon, as to entitle parties interested to invoke the jurisdiction of a court of equity for specific performance. When the contract has been followed by possession, in conformity with the partition agreed upon, since a court would have enforced an equitable partition without the consent of all the parties, a partition thus effected by agreement will be so far binding as to be enforceable, unless it is infected with fraud. A partition effected by mutual agreement, followed by possession, is the equivalent of a decree in a court of chancery, which does not of itself convey or transfer the title, even after the allotment of the several shares of each of the parties to the proceeding. The transfer of title is a matter distinct from the partition, but the transfer may be compelled by a court of equity." *Bruce* v. *Osgood, supra; Gay* v. *Parpart* (1882), 106 U. S. 679, 1 Sup. Ct. 456, 27 L. Ed. 256; *Buzzell* v. *Gallagher* (1871), 28 Wis. 678. However, in the instant case, after the partition was made under the verbal agreement, the parties executed deeds which

ignore the partition, except in so far as it set off
to Calvin the 19-acre tract, and expressly recognize
the joint ownership of the 61 acres between appellant
and his mother.

It is true, as appellant contends, that as a rule all
oral negotiations leading up to the execution of a
contract or deed are merged therein. *C. F.*
Adams Co. v. Helman (1914), 58 Ind. App.
394, 399, 106 N. E. 733; *O'Brien* v. *Higley*
(1904) 162 Ind. 316, 318, 319, 70 N. E. 242. Assum-
ing, however, as we must under the evidence above
indicated, that there had been a fully consummated
and executed partition of the 61 acres in question be-
tween appellant and the mother at the time of the
making of the deeds in question, the doctrine of
merger could have no application except on the
theory that the equitable title created by such
partition was merged in the legal title con-
veyed by the deeds, and such a merger,
viz., of an equitable title in a legal title results
only where the two estates are "co-extensive or
commensurate, or more accurately, the legal estate
must be equally extensive with or more extensive
than the equitable estate, for the equitable fee will
not merge in a partial or particular interest."  Be-
sides in such a case "the true test of merger
is the intention of the party, either expressed
or implied.  If the intention has not been
expressed it will be sought for and ascertained in all
the circumstances of the transaction.  If it appears
from all the circumstances to be for the benefit
of the party acquiring both interests, that merger
shall not take place, but that the equitable or lesser
estate shall be kept alive, then his intention that
such a result will follow will be presumed and
equity will carry it into execution by preventing a
merger.  If, from all the circumstances, a merger

would be disadvantageous to the party, then his intention that it should not result will be presumed." *Chase* v. *VanMeter* (1894), 140 Ind. 321, 333, 39 N. E. 455, and cases cited; 20 Am. and Eng. Ency. Law (2d ed.), 590, and authorities cited in note. We are of the opinion that the facts as herein indicated do not bring the instant case within the merger rule above announced.

We next consider appellant's contention that "parties to a valid sealed instrument and their privies are estopped to deny the force and effect of such instrument by any evidence of inferior solemnity." This contention is supported by authority. Bigelow, Estoppel (2d ed.) 239. However, in this connection it should be stated that before a person should be estopped by his 6. deed such deed must be certain as to the precise fact upon which the estoppel is to operate; that is to say "no one shall be denied setting up the truth unless it is in plain and clear contradiction to his former allegations and acts." 11 Am. and Eng. Ency. Law (2d ed.), 388-399 and notes.

The deeds relied on by appellant to estop appellees from asserting the partition made pursuant to said parol agreement, excepting that, *supra*, from Maria to Robert of date March 25, 7. 1896, are quitclaim deeds. In an annotated note to the case of *Babcock* v. *Wells* (1903), 25 R. I. 23, 105 Am. St. 848, 863, the editor says: "No estoppel arises either from making or accepting a quitclaim deed. Both the grantor and the grantee remain at liberty to prove that no interest or estate was transmitted thereby. Hence, as we have already shown, the grantor may assert any title subsequently acquired by him, and the grantee,

whenever the question becomes material, may show that his grantor had no estate, right, title or interest to convey and consequently that nothing passed by the deed." *City, etc.* v. *Lawton,* (1881), 18 Cal. 465, 475-476, 79 Am. Dec. 187; *Flagg* v. *Mann* (1883), 14 Pick. (Mass.) 467, 481; *Bigelow* v. *Finch* (1851), 11 Barb. (N. Y.) 498, 500; *Kingman* v. *Sparrow* (1851), 12 Barb. 201, 208; *Lytle* v. *Beveridge* (1874), 58 N. Y. 592.

In *Olmstead* v. *Tracy* (1906), 145 Mich. 299, 116 Am. St. 301, the court says: "The deed in which, in 1883, plaintiff joined, which he now revokes, was a quitclaim deed, not an assertion of any particular, or of any, title. It did not of itself operate as an estoppel against either the grantor or grantee as to the nature or extent of the title. *Sands* v. *Davis* (1879), 40 Mich. 14, 20."

It follows that the estoppel by deed, if any, must arise on account of the deed of appellees' grandmother in which she deeded to her son Robert (appellees' father and remote grantor) the undivided one-half of the two-thirds, and to appellant and Calvin, each, the undivided one-fourth of the two-thirds of the 61 acres, reserving to herself a life estate therein. It is through this deed alone, so far as the evidence shows, that appellees must base their claims to any right or interest in said real estate. Under it their father obtained an undivided one-third (one-half of two-thirds) interest in both the 21-acre and the south 40-acre tracts. The same interest was sold at sheriff's sale to the grandfather of appellees. It is true the grandfather in his will attempts to devise 20 acres of the south 40-acres but he could give no more than he had in such tract, which as before stated was only an undivided one-third interest in the 61 acres. We

8.     are of the opinion that appellees, by the deed through which they claim title, are estopped from asserting that, by reason of a partition had between their remote grantors and appellant before the making of such deed, they are entitled to an interest or title in the real estate different from that expressed in their deed, in the absence of a showing of fraud or mistake connected with the execution of such deed and such issue was neither tendered by the pleadings nor shown by the evidence.

Appellee, however, in effect claims that after the making of the deeds the appellant and his mother continued to occupy and separately farm their respective tracts and continued to take the rent therefor, etc., and hence acquiesced in and ratified the partition before made.    While, as before stated, there is no averment of a partition after the making of said deeds or of a ratification of the partition previously made in either appellees' answer or cross-complaint; yet, in view of the admitted facts in this case, and the questions here presented, we are inclined to give appellees the benefit of any evidence pertinent to such an issue.    However, the evidence which comes to us, in so far as it can be said to support any partition or ratification thereof after such deed was made, shows a partition or an arrangement between the mother and appellant, at a time when the mother had nothing to partition.    By her deed to her sons, she had conveyed to them her interest in the fee in the entire 61 acres, and hence any arrangement between her and appellant after the conveyance could only affect her life estate in said land.    The evidence places appellees in a peculiar situation, in this:    If it be conceded that there was a fully consummated partition of the 61 acres before the deed made by their grandmother, Maria, to their father, Robert, on March

25, 1896, then the deed to their father, in so far as it attempted to convey the undivided one-half of two-thirds of the 21 acres, was a nullity because the grandmother herself, had lost all title in the 21 acres by reason of such partition; hence appellees' father by such deed obtained only an undivided one-third of the south 40-acre tract, and appellees who claim through such deed could likewise obtain no greater interest than their grantor had. On the other hand there is no evidence to show any partition after the making of said deeds, nor any after ratification of any partition before made, except the partition had between the mother and appellant after the mother had conveyed all interest she had in the fee. So that, giving to appellees the advantage of all the evidence as it comes to us and giving it as broad an application as possible under the issues, we are forced to the conclusion that it will not sustain the decision of the trial court, and that such decision is contrary to law.

The judgment below is therefore reversed with instructions to the trial court to grant appellant's motion for new trial, and with leave to the parties to reform the issues if they so desire, and for any further proceedings consistent with this opinion.

NOTE.—Reported in 112 N. E. 835. Merger of estates (99 Am. St. 153) as dependent on intention of parties, 7 Ann. Cas. 700. Parol partition, validity, 8 Ann. Cas. 405. See, also, under (1) 4 C. J. 900; (4), (5), (9), 16 Cyc 665-667; (7) 16 Cyc 688.