No. 28,241.

CHARLES F. MORAN et al., *Appellants*, v. J. P. THURMAN and JOHN J. WYATT, *Appellees*.

(275 Pac. 160.)

Opinion filed March 9, 1929.

*William Keith* and *Lester Wilkinson*, both of Wichita, for the appellants.

*Thomas C. Wilson, Henry Lampl* and *Rupert Teall*, all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Charles F. Moran and his wife, Edith A. Moran, against J. P. Thurman and John J. Wyatt, brokers, to recover a commission which the latter had fraudulently obtained from them in the sale of real estate which they owned. Upon the evidence offered by plaintiffs the trial court held that it did not establish a cause of action against defendants and a demurrer thereto was sustained. Plaintiffs appeal.

It appears that the plaintiffs owned a half section of land which they listed with defendants to find a purchaser. A purchaser was

found in A. D. Updegraff at the price of $24,000. A number of mortgages had been given upon the land before the sale was made, and Updegraff assumed the face of the mortgages as part of the purchase price; $1,000 was paid by the purchaser as earnest money and the parties entered into a written agreement to the effect that plaintiffs ratified the contract of sale, acknowledged the receipt of $1,000, and it was stipulated that the net balance to be paid to plaintiffs, less the commission, when the transaction was closed was $19,000, which amount was made up in large part of the mortgage indebtedness assumed by the purchaser. As to the commission of plaintiffs, it was stipulated that the balance of the $24,000 to be paid by the purchaser, whether in land, notes, mortgages, money or other property, should be paid to the defendants as their compensation for negotiating the sale, and that no other commission should be due from plaintiffs. It was stipulated that the defendants were required to pay out of the $4,000 interest on the mortgages up to a certain date. The agreement contained other provisions as to producing abstracts of title, the giving of possession of the land, the division of the crops on the land, also as to a possible lease, and that they would aid in procuring a loan to plaintiffs on another tract of land, and some other provisions not material to the controversy.

The transaction with the purchaser was closed and a deed to him was executed. Out of the money paid by the purchaser, after subtracting the mortgage indebtedness which had been assumed by him, there remained the sum of $5,933.71, and of that sum there was due to the plaintiffs as commission $3,140.34, which was paid to defendants through plaintiffs' agent, Paul Brown, who acted for plaintiffs under specific written directions as to the payment. These directions were carried out faithfully by Brown. The plaintiffs in their directions specified the sum due to defendants, to wit: $3,140.-34, and the transaction was closed and payment of commission made in May, 1918. Nearly nine years later, and on February 28, 1927, this action was brought by plaintiffs asking for the recovery of the commission paid to defendants in 1918, alleging that in the transaction defendants had not dealt openly and fairly with plaintiffs in reporting the sale; that they represented the land was sold for $20,000, instead of $24,000, the actual price, and that $4,000 of the named price of $24,000 was oil stock of the face value of $4,000, but

that it was worth much less and that this was to be accepted by defendants as commission. It is alleged that there was no oil stock involved in the·deal and that plaintiffs did not learn that fact until February, 1925; that the sale was made for $24,000 cash, which was the consideration actually paid by the purchaser. Because of the alleged misrepresentation and fraud of defendants, the plaintiffs claimed the defendants had forfeited the right to any commission and hence this action to recover it back.

The defendants answered with a general denial and also an allegation that the cause pleaded by plaintiff was barred by the statute of limitations as it accrued, if ever, more than two years before the petition charging fraud was filed. The plaintiff, Moran, testified that defendants represented that the price offered for the land was .$20,000 in cash and $4,000 in oil stock which was to be accepted by them as commission for negotiating the sale, and that not until February, 1925, did he learn of the misrepresentation when he was told by the purchaser that no part of the consideration was to be paid in oil stock, and that he had not offered oil stock as part payment.

The evidence upon which the ruling was made included the following letters from .plaintiff, dated May 2, 1918, which specifically directed payment to defendants and on which a receipt of payment was indorsed:

"WICHITA, KAN., May 2, 1918.

"MR. PAUL BROWN, WICHITA, KAN.:

"DEAR SIR—Out of the proceeds of the money you collect from Dr. Updegraff, you will please pay to J. P. Thurman and John J. Wyatt the sum of $4,000, less the following amounts:

To be paid...................................................... $4,000.00
Less:
  Interest on first mortgage, Feb. 1, 1918, to Feb. 1, 1919.. $750.00
  Interest on Swartz mortgage, Feb. 1, 1918, to May 1, 1918,  62.50
  Interest on Chapple mortgage, Feb. 1, 1918, to May 1, 1918,  17.16
  Bonus of 50 cents per acre on pasture, 60 acres...........  30.00
                                                             859.66

Net amount to be paid....................................... $3,140.34

"Yours very truly,      C. F. MORAN."

On margin of letter the following:      "$5,933.71
                                              3,140.34

                                              $2,793.37

"May 9, 1918.

"MR. PAUL BROWN—Pay to J. P. Thurman and John J. Wyatt, the $3,140.34 set out in this letter and I hereby acknowledge receipt of the amount coming to me, to wit, $2,793.37.          C. F. MORAN."

"May 9, 1918.

"Received of Paul Brown the $3,140.34 stated in this letter.

J. P. Thurman.
John J. Wyatt."

Payment was made under this direction with a check duly signed to Thurman & Wyatt for $3,140.34, on which payment was received by the defendants. From the moneys derived from the purchaser a check was issued to plaintiffs for $2,793.37, which was paid to plaintiffs as their portion of the purchase price. On May 2, 1918, a letter of plaintiffs directing a delivery of the deed to the purchaser which included a statement of the amount to be collected after the deduction of the mortgages assumed, taxes and interest to be paid by the defendants as follows:

"Mr. Paul Brown, Wichita, Kan.: May 2, 1918.

"Dear Sir—You will please deliver my deed to the north half of 27-32-1 east, Sumner county, Kansas, to Cliff Matson for Dr. Updegraff, upon the payment of $23,000, less the following amounts as per attached statements:

| | | |
|---|---:|---:|
| Account to be paid | | $23,000.00 |
| Less first mortgage and accrued interest to Feb. 1, 1919 | $11,750.00 | |
| Less second mortgage favor S. E. Swartz, accumulated interest and penalties | 4,143.54 | |
| Less mortgage favor J. N. Chapple, accrued interest and penalties | 1,082.16 | |
| Less taxes and penalties | 90.59 | |
| | | 17,066.29 |
| Net amount to be collected | | $5,933.71 |

"Yours very truly, C. F. Moran."

Another letter addressed to Brown was the following:

"Mr. Paul Brown, Wichita, Kan.: May 2, 1918.

"Dear Sir—Out of the proceeds of the money you collect from Dr. Updegraff, you will please pay to J. P. Thurman and John J. Wyatt the sum of $4,000, less the following amounts:

| | | |
|---|---:|---:|
| To be paid | | $4,000.00 |
| Less: | | |
| Interest on first mortgage, Feb. 1, 1918, to Feb. 1, 1919 | $750.00 | |
| Interest on Swartz mortgage, Feb. 1, 1918, to May 1, 1918, | 62.50 | |
| Interest on Chapple mortgage, Feb. 1, 1918, to May 1, 1918, | 17.16 | |
| Bonus of 50 cents per acre on pasture, 60 acres | 30.00 | |
| | | 859.66 |
| Net amount to be paid | | $3,140.34 |

"Yours very truly, C. F. Moran."

On May 7, 1918, the following receipt and release were given relating to compliance with other provisions of the contract and recognizing the cash balance due from the land and the amount to be paid to the defendants as their commission:

"WELLINGTON, KAN., May 7, 1918.

"Mr. Paul Brown, you are hereby instructed that whenever my deal is closed and financed according to contract that is to say to the extent of sixteen thousand eight hundred dollars on the same terms as is provided for in contract dated April 4, 1918, and supplemental contract dated April 20, 1918, which contract is on NE¼ of sec. 11-33-2 west and SE¼ of sec. 2-33-2 west, then said Thurman and Wyatt shall have the $3,140.32, and same shall be paid to them by you out of $5,933.71, which you now hold.          C. F. MORAN."

On May 21, 1918, the following receipt and release was executed by Moran acknowledging fulfillment of the contract in other respects:

"May 21, 1918.

"Received of J. P. Thurman and John J. Wyatt satisfactory loans aggregating $16,800, and $150 in cash, in full compliance with contract, and full and complete settlement of deal except as follows: Said Thurman and Wyatt are to procure a $200 loan due Sept. 1, 1918, at 6 per cent interest, same to be secured by a chattel mortgage on one-third of the wheat now growing on the southeast quarter of sec. 2 and the northeast quarter of sec. 11-33-2 west; and I hereby release said Thurman and Wyatt of any claim of whatsoever kind.                              CHARLE F. MORAN.

"Receipt and release: In fulfillment of contract as to procuring loans. C. F. Moran with J. P. Thurman and John J. Wyatt."

While plaintiffs contend that the court erred in sustaining a demurrer to the evidence it appears that the evidence then before the court showed conclusively that the price at which the land was sold was $24,000, that there was no question as to the existing liens upon it, nor that the purchaser was to assume these. There was no question either that the price was actually paid nor that a written contract was made between plaintiffs and defendants before the transaction was closed and the deed executed to the purchaser. The plaintiffs undertook to say that defendants had represented something to the effect that they might have to take oil stock for the $4,000, over and above the $20,000 named, instead of cash, and he said that no such stock was ever received or tendered, and that only cash was to be paid. However, when the contract was afterwards made it was stipulated that the $4,000 reserved for commission might be paid in land, notes, mortgages, money or other property and that plaintiffs would never be required to pay any other commission. That it was immaterial to plaintiffs in what form payment of the commission was made as the amount to be paid, whether in money or other property, was definitely stipulated. Defendants agreed to pay out of the $4,000 certain interest which was then due and other

charges against the land, which left for their compensation for finding a purchaser $3,140.34. This fact was stated in writing in plaintiffs' letters indicating that it was well understood and acceptable to both parties. The compensation thus paid was treated by both parties as a money and not an oil-stock payment. Prior to the execution of the deed the plaintiffs stated and restated the accounting by which this amount was found due to plaintiffs, and under his direction it was paid to defendants more than ten years ago. After settling with defendants on a money basis it is idle for plaintiffs to contend that the representations respecting oil stock might be taken for part of the price of the land had operated as a fraud upon them. The letters quoted in relation to the transaction showed a deliberate · accounting, settlement and payment of the commission, including the subsequent release of defendants, which altogether makes it clear and beyond question that the plaintiffs in their evidence had failed to establish a right of recovery. In view of what had occurred and of the action of plaintiffs, after the alleged representation and the settlement upon a money basis, it would be futile and a trifling with justice to hold that plaintiffs had shown even a *prima facie* right of recovery. More than that, if there had been fraudulent representations made in 1918 respecting acceptance of oil stock, the plaintiff learned definitely, when the transaction was closed, that payment was made in money and not in oil stock. His cause of action for fraud was barred long before the action was brought. It is vain to talk about his lack of knowledge of the fraud respecting oil stock when under his direction money and not oil stock was paid. The evidence shows that beyond doubt plaintiffs knew the essential facts in 1918, and the result is that the right of action, if any they had, was barred years before it was brought.

There is a complaint of the reception and consideration given to the testimony of Paul Brown, the attorney, who acted for plaintiffs in the receipt and payment of the purchase money and in the delivery of the deed. They contend that being an attorney the letters and directions given to Brown by plaintiffs were confidential and privileged. It will be observed that, while Brown was an attorney, the matters committed to him were not of a secret or confidential character.

On the other hand, the instructions given to him were extra professional in nature such as might have been given to an agent or

trustee or anyone not acting in the capacity of an attorney. If it be assumed that the directions in the letters were given to Brown as an attorney they still do not come within the rule of privileged communications since they were intended to be communicated to others. By these communications the plaintiffs constituted Brown as their special agent to make the settlement and close the transaction for the purposes and on the terms prescribed in the letters. As to such communications it has been said that:

"There is no privilege as to statements by a client to his attorney for communication to a third person, or matters which the attorney, in the discharge of his duty to his client, is necessarily obliged to make public." (40 Cyc. 2375.)

In respect to the character of communications to an attorney that come within the privilege, this court held that:

"In order for a communication from a client to his attorney to be confidential and to impose upon the attorney the duty of not disclosing the same it must be of a confidential character, and so regarded, at least by the client, at the time, and must relate to a matter which is in its nature private and properly the subject of confidential disclosure." (*In re Elliott,* 73 Kan. 151, 84 Pac. 750.)

As shown the letters authorized Brown to deal with outsiders and settle with them according to the terms prescribed by plaintiffs and were not regarded by either plaintiffs or Brown as private or confidential. Among the many authorities treating on this phase of privileged communications see *Bruce et al. v. Osgood, Trustee,* 113 Ind. 360; *Koeber v. Somers,* 108 Wis. 497; *Rosseau v. Bleau et al.,* 131 N. Y. 177; *Williams v. Blumenthal,* 27 Wash. 24; 28 R. C. L. 563.

The judgment of the district court is affirmed.