Marguerite EBERSOLD, Appellant (Defendant/Counter–Plaintiff Below),

v.

George WISE, Sr., and Donna Wise, Appellees (Plaintiffs/Counter–Defendants Below),

No. 3–379A61.

Court of Appeals of Indiana, Third District.

Nov. 24, 1980.

James V. Tsoutsouris, Valparaiso, for appellant.

Mark D. Blackwell, Nelson & Blackwell, Valparaiso, for appellees.

HOFFMAN, Judge.

On April 20, 1968 Marguerite Ebersold entered into an agreement with George and Donna Wise, Buyers and appellees herein, whereby Mrs. Ebersold agreed to sell and Buyers agreed to purchase a parcel of real estate located at 303 Monroe Street, Valparaiso, Indiana. This agreement was reduced to writing and signed by the parties. The agreement recited that the sum of $200 had been paid by the Buyers and received by the Seller as part of a total down payment of $1,000 which was to be paid in full in August 1968, at which time the parties would complete a real estate contract for the property. This agreement preceded the making of the actual real estate contract in order to allow the Buyers an opportunity to complete the $1,000 down payment. The agreement also provided that the Buyers would pay taxes due in 1969 on the subject property. Finally, the April 20, 1968 agreement provided that the Buyers would take control of the property in April of 1968 and from that date forth pay the sum of $130 per month starting May 1, 1968.

On October 8, 1968 the parties again met to execute a formal agreement for the sale of the property. At this time a purchase price of $21,000 was agreed upon as the total purchase price of the house and property. The purchase price was to be paid in installments as follows:

"The sum of $1,000.00 cash in hand upon the execution of this agreement, the receipt whereof by Seller is hereby acknowledged.

"The balance of $20,000.00, together with interest at the rate of 6% per annum, shall be payable in monthly payments of $130.00, including interest, on the 1st day of each and every month commencing on November 1, 1968, the entire principal sum plus interest thereon to be paid 10 years from the date hereof."

The Buyers agreed to pay the taxes due for the latter half of 1968 which were to become due in 1969, as well as pay all subsequently accruing taxes. The Buyers further agreed to carry fire and extended coverage insurance on the improvements on the real estate, in the names of both the Seller and the Buyers, in the amount of $20,000 or an amount not less than the balance of the purchase price due under the contract. Various other provisions were in the real estate contract, including a forfeiture clause. This clause provided that failure on the part of the Buyers to make any payment or to perform any other duty under the contract would be cause, at Seller's option, to declare the contract terminated and forfeited for default. It was agreed that failure of the Seller to exercise this clause on any given breach was not to be construed as a waiver of her right to exercise it on a subsequently occurring default. Finally, this agreement provided that in the event the Seller chose to exercise her rights under this clause, any amounts paid by the Buyers would become liquidated damages for breach of contract and retained as such by the Seller. This agreement was signed by the Seller and Mrs. Wise, one of the Buyers, in the presence of a notary public. Mr. Wise, the second Buyer, signed the document at his home.

At the time the contract was signed, or shortly thereafter, $400 of the down payment had been paid by the Buyers. The Buyers took possession of the property and paid $130 per month as per the agreement from 1968 until 1973. In April 1973 the Seller notified the Buyers that the rent on

the property would be increased to $200 per month. From April 1973 until August 1976, the Buyers paid $200 per month as demanded by the Seller. In August of 1976 the Buyers returned to payments of $130 per month on the advice of their attorney. In January 1976 the Seller sent notice to the Buyers that rent on the Monroe Street property would be $225 per month. This increased rent was never paid by the Buyers. On October 1, 1976 the Seller filed a complaint in ejectment and the Buyers responded by suing for specific performance of the contract or damages for the Seller's breach.

At trial, evidence was received to show that the total down payment was never made. The court later determined that this evidence was in violation of the parol evidence rule and ordered it excluded. The trial court also ruled that a valid real estate contract does exist but the forfeiture provision of the contract is null and void and foreclosure is the proper remedy.

The Seller now brings this appeal, alleging two errors:

(1) Did the trial court err in its holding that the parol evidence rule is applicable to preclude testimony that the down payment, recited in the agreement, was never paid?

(2) Did the trial court err in its holding that the forfeiture provision of the contract was null and void and that the only remedy available to the Seller was foreclosure?

■ In general the parol evidence rule operates to exclude extrinsic evidence of prior or contemporaneous declarations and transactions offered to vary or contradict the terms of an integrated written agreement. *Traylor et al. v. Lafayette Nat'l Bank* (1973), 158 Ind.App. 552, 303 N.E.2d 672. The Seller here argues that the acknowledgement of receipt of the down payment comes within an exception to the parol evidence rule and evidence should be allowed to show the down payment was never fully paid. A "receipts exception" to the parol evidence rule has been recognized by the courts in Indiana. In applying this exception, it is necessary to distinguish between a contract and a mere receipt. A contractual obligation which stipulates the amount of consideration may not be challenged by parol evidence. In contrast, for an ordinary receipt which contains no contractual obligations or responsibilities, parol evidence is admissible.

■ In *Freidman v. Citizens, etc., Water Co.* (1925), 82 Ind.App. 667, 147 N.E. 294, the buyer of certain machinery and pipes attempted to show that the consideration was not to be paid until the items were resold. This contention was in direct conflict with the terms of the written contract. In disallowing this parol evidence, the court stated:

"It is a familiar rule that, in the absence of fraud or mistake, a written contract merges all prior parol negotiations, and any parol agreement made before or contemporaneously with a written contract cannot be permitted to contradict, very, or modify its terms. *O'Brien v. Higley*, 162 Ind. 316, 70 N.E. 242, *supra; Ralya v. Atkins*, 157 Ind. 331, 339, 340, 61 N.E. 726; *Hardin v. Sweeney*, 54 Ind.App. 614–616, 103 N.E. 115; *Murray v. Murray*, 62 Ind.App. 132, 112 N.E. 835.

"It is true that it is averred that this parol agreement was a part of the consideration, but the consideration was contractual, and, while it is the general rule that the consideration expressed in a writing may be varied or contradicted by parol evidence (*Rockhill v. Spraggs*, 9 Ind. [30] 31, 68 Am.Dec. 607; *Levering v. Shockey*, 100 Ind. 558), such rule has its limitation, in that *where the contract is complete on its face a stipulation as to the consideration becomes contractual,* and the ordinary rule with reference to the effect that parol testimony cannot be received to vary, contradict, or add to the terms of a written contract prevails, and under such circumstances *the consideration expressed cannot be varied by parol any more than any other portion of the written contract.*" (Emphasis added). 147 N.E. at 295–296.

Thus, when the consideration is stated in a contractual context, it may not be varied or contradicted by parol evidence.

In contrast, a mere receipt was discussed in *Western & Southern Life Ins. Co. v. Lottes* (1946), 116 Ind.App. 559, 64 N.E.2d 405. An application for insurance contained a detachable receipt form which read as follows:

" 'Received from ..... Gilbert P. Lottes ..... one dollar ..... Dollars ($1.00) to be applied toward the payment of the premium on the policy of life insurance for which said ..... Gilbert P. Lottes ..... has made application dated Aug. 5, 1941.' "

64 N.E.2d at 409.

Parol evidence was allowed to show that a greater amount had actually been paid.

"The language in the receipt showing the amount of consideration paid as above quoted is in the form of an ordinary receipt and is stated by way of recital and is not stated contractually. It is settled law in this state that where the amount paid is stated in the form of an ordinary receipt by way of recital and is not stated contractually, parol evidence is admissible to show the amount which was actually paid and received by the party signing the receipt. *Alcorn v. Morgan*, 1881, 77 Ind. 184, 186; *Lowe v. Thompson*, 1882, 86 Ind. 503; *Stewart v. Chicago & E. I. R. CO.*, 1895, 141 Ind. 55, 60, 40 N.E. 67; *Pennsylvania Co. v. Dolan*, 1892, 6 Ind.App. 109, 120, 32 N.E. 802, 51 Am. St.Rep. 289; *State Highway Commission v. Wilhite*, 1941, 218 Ind. 177, 31 N.E.2d 281."

64 N.E.2d at 409.

Consistent with the view that parol evidence may be allowed in the case of a mere receipt is *Stewart v. Chicago, etc., R. R. and Chicago and Indiana Coal Y. Co.* (1895), 141 Ind. 55, 40 N.E. 67. In distinguishing a contract from a receipt, the court stated that a contract exists "where the consideration consists in the performance of some duty which is, by the terms of the writing, undertaken on the one side for the benefit of the other."

In the present case, the document in question is a three and one-half page "real estate contract" which was prepared by the Seller. Numerous mutual covenants concerning taxes, insurance, repairs and the conveyance by warranty deed are included in the document. Clearly, this instrument is more than a mere receipt. It constitutes a contract which is equally binding on both parties and may not be varied by parol evidence. In the absence of any charge of fraud or mutual mistake, the Seller will not be permitted to show that the consideration for the sale was other than that expressed in the written instrument. *Indianapolis Union R. Co. v. Houlihan* (1901), 157 Ind. 494, 60 N.E. 943 (concerning a release from liability).

Further support for this decision is found in the more recent case of *Swanson–Nunn Realty Co., Inc. v. Gentry* (1962), 134 Ind.App. 580, 186 N.E.2d 574. A written contract between a realty company and an independent contractor was the subject of that litigation. The contractor attempted to show that the entire consideration was not expressed in the written contract. Following a comprehensive analysis of the receipts exception to the parol evidence rule, the court concluded:

"However, it is clear that by the written contract here involved the appellant did promise to do something. The contract states that appellee and Noble Gentry are contractors '*desirous* of performing certain work *on the premises*' of appellant, and that the latter 'is willing to *permit them* to do such work *on the basis hereinafter outlined.*' (Original emphasis). The appellant's financial obligation and the work to be done by the contractors is then stated. It seems to us that the consideration mentioned in said contract is mutual and consists not only of the recital as to the cash amount appellant became thereby obligated to pay the contractors, but, expresses, also, the permission by appellant for said contractors to do the work on appellant's premises in satisfaction of the expressed desire of the contractors. Thus it seems evident that

by the said written contract appellant did agree and promise to do something and that the written contract expressed a consideration which was not 'merely ... a recital of a precedent or contemporaneous fact.' "

186 N.E.2d at 581.

Therefore the exchange of mutual promises creates a contract which is not subject to contradiction by parol evidence.

The court in *Swanson–Nunn, supra,* also discussed the legal implications of the failure by one party to pay the full amount of consideration recited in the written contract. Because this is the same factual situation which exists in the present case, the court's comments on this issue are relevant here.

"In other words, appellee, in effect, asserts that because appellant, in fact, had failed to perform one of the provisions of the pleaded written contract, such failure may be accepted as evidence that no such contract existed between them. We are not impressed that the failure of the appellant to comply with a provision of the written contract is, of itself, evidence that the parties did not intend to enter into the written contract or that such written contract was fraudulent or false when entered into. By the written contract appellee stated that he acknowledged the receipt of $160.00. Now, if he had not, in fact, actually received the sum he acknowledged as paid to him, then he was not obligated to sign the contract and he could have refused to enter upon the work until it was paid."

186 N.E.2d at 582.

Therefore, it becomes clear that the Seller in the present case should not have entered into the contract and acknowledged the receipt of the full down payment if, in fact, the full amount had not been paid. Since the Seller wrote the contract, signed it, had the Buyers sign it and had it notarized by a notary public, she will not now be permitted to contradict the terms of the agreement. The trial court correctly ruled that a down payment of $1,000 was made by the Buyers to the Seller and any evidence to the contrary is barred by the parol evidence rule.[1]

The second issue presented for review by this appeal challenges the ruling that the forfeiture provision of the contract is null and void and the only remedy available to the Seller is foreclosure. In determining whether forfeiture should be allowed, the courts must look to all the facts of the transaction. In the instant case, the total purchase price of the house and property was $21,000. At the time of trial, the Buyers had paid $9,161.62 in principal and interest and made improvements on the real estate in the amount of $3,000. The Buyers were delinquent on the payment of taxes and insurance, however, the default was not due to a lack of good faith by the Buyers. The Buyers' repeated attempts to pay the taxes and insurance were thwarted by the Seller.

Under the doctrine of *Skendzel et al. v. Marshall et al.* (1973), 261 Ind. 226, 301 N.E.2d 641, forfeiture is inappropriate when the vendee has acquired a substantial interest in the property and a forfeiture would result in substantial injustice. In certain cases, however, forfeiture is still permitted.

"In the case of an abandoning absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances

---

1. An additional argument concerning a condition precedent is waived due to a failure by appellant to raise this argument in her motion to correct errors.

in which it is found to be consonant with notions of fairness and justice under the law."

301 N.E.2d at 650.

*See also: Morris v. Weigle* (1978), Ind., 383 N.E.2d 341; *Pierce v. Yochum* (1975), 164 Ind.App. 443, 330 N.E.2d 102. The Buyers in the present case are clearly not absconding or abandoning vendees. Further, they have paid more than a minimal amount on the contract and have been in possession of the premises for more than ten years. A substantial injustice would be created by a forfeiture in this case. Therefore, the trial court correctly denied a forfeiture and ruled that foreclosure is the proper remedy.

The judgment of the trial court is affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, P. J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

I respectfully dissent from the majority's assertion that the provision of the formal contract calling for a down payment of one thousand dollars ($1,000) and stating "the receipt whereof by seller is hereby acknowledged" is contractual in nature and thus precludes dispute by parol evidence.

As our Supreme Court recognized in *Stewart v. Chicago, etc. R.R. and Chicago and Indiana Coal Ry. Co.* (1895), 141 Ind. 55, 40 N.E. 67, cited by the majority, the quoted phrase is a recital of fact. As such it is evidence of payment but as with other questions of fact it is subject to dispute. It may be contradicted by competent evidence.

Phrased somewhat differently, it appears to me that the appropriate inquiry is whether the phrase in question defines the obligations of the parties or purports to report the performance of obligations defined elsewhere.

If the former, then it is within the parties' province to agree to what they choose, and if the agreement is clear they may not vary its terms by parol evidence that a sow's ear was intended to mean a silk purse.

However, if the latter instance is involved, then I believe, as with other issues of performance or breach, the parties are free to adduce evidence to establish the fact. I would thus say that while the amount of the consideration is not subject to dispute, its payment or more pointedly its non–payment, may always be proved.

I do not, however, subscribe to the appellant's further assertion that this non–payment of the down payment worked an avoidance of the entire contract. Therefore, since I agree with the balance of the majority's analysis, I would remand the case for hearing on whether the down payment was made and such adjustment of the money judgment as might thereby become necessary. In all other respects, I would affirm.