## REDMAN *v.* THE STATE.

CHANGE OF VENUE.—RULES OF COURT.—A rule of the circuit court requiring an application for a change of venue, either from the county or from the judge, to be made not later than the day for which the cause is docketed for trial, is not repugnant to the statute on that subject, and is within the statute giving to such courts the right to adopt rules for conducting the business therein.

TRANSCRIPT OF RECORD.—CERTIFICATE.—On a prosecution for an assault and battery with an intent to kill, alleged to have been committed by the accused while aiding his brother to escape from custody, after a verdict of guilty had been returned against him in a prosecution for larceny, the State offered in evidence a transcript of the record of the prosecution for larceny. The clerk certified that the transcript was "a true and complete copy of the proceedings of said court in said cause, from the finding of the indictment to the verdict of the jury inclusive."

*Held*, that the transcript was properly admitted in evidence to show the pendency of the prosecution, the appearance of the accused, and that he was found guilty.

DUTIES OF ATTORNEYS.—CONTEMPT OF COURT.—It is the duty of an attorney to refrain from abusive language and to maintain a respectful bearing towards the court, and the court has power to protect itself against any violation of these duties.

SAME.—On the trial of a criminal cause, one of defendant's counsel having asked, in the cross-examination of a witness, a question which the judge deemed improper, he so informed the counsel, who replied: "This is a cross-examination, and if we cannot examine our witness he can stand aside." The court regarded the language as offensive, and when the next witness came to be cross-examined, directed another one of the defendant's counsel to conduct the cross-examination, which he declined to do, and insisted that the first counsel should be allowed to do so, which the court refused to permit.

*Held*, that the facts justified the action of the court.

ARGUMENT OF COUNSEL.—TIME.—Where an exception was taken to an order of the court limiting the argument to a certain time, and it did not appear that the limit was unreasonable, or that the counsel asked or desired a longer time, it was held that there was no error.

ESCAPE AFTER VERDICT.—When the accused is on bail, the return of a verdict of guilty does not, of itself, terminate his right to his liberty or place him in the custody of the sheriff, nor does it give to the sheriff any right to arrest or imprison him, and hence a prosecution cannot be maintained, under such circumstances, against one who aids in the escape of the accused.

APPEAL from the *Jefferson* Circuit Court.

ELLIOTT, J.—*Redman* was indicted in the *Jennings* Circuit

Court for an assault and battery with ·intent to murder. The case was transferred by a change of venue to the *Jefferson* Circuit Court, where he was tried and convicted, the jury assessing his fine at one dollar, and that he be imprisoned in the state prison for the term of two years. Motion for a new trial overruled, and judgment on the finding of the jury. The defendant appeals.

Several questions are presented and urged as grounds for a reversal of the judgment, which will be examined in their order.

When the venue was changed from *Jennings* to *Jefferson* county, the court ordered that the cause be set down for trial on the third *Wednesday* of the then next term of said *Jefferson* Circuit Court, being the 9th day of *October*, 1867. At the time said change of venue was granted, the defendant was in custody and confined in the jail of *Jennings* county, and was not removed therefrom to the jail of *Jefferson* county until said 9th day of *October*, 1867. On the day following, he filed an affidavit in the *Jefferson* Circuit Court, stating that he believed he could not receive a fair trial of said cause therein, owing to·the prejudice of the presiding judge of said court against him "and his defense which .exists;" that he was only brought to the *Jefferson* county jail at about two o'clock in the afternoon of the 9th of *October*, 1867, "and this is the first opportunity defendant has had in this court to make said application."

The bill of exceptions, after setting out the affidavit, proceeds as follows; "The court thereupon overruled said motion and refused to change the venue, to which ruling the defendant then and there excepted. In the rules of practice adopted by said *Jefferson* Circuit Court, on the 12th day of *July*, 1865, and on that day entered of record in the order book of said court, is found rule No. 12, which rule of court has been in force ever since said 12th day of *July*, 1865, and is still in force, and reads as follows: 'An application to change the venue will not be entertained after the day the cause is docketed for trial, nor

will such application be entertained after the party making the same has applied for a continuance which has been overruled. This rule is applicable to criminal as well as civil causes, and applies to changes from the judge as well as from the county.' This case was docketed for trial on the 9th day of *October*, 1867, the day before the application was made for the change of venue, and the defendant was in court at the meeting of the court after dinner—at half-past two o'clock on said 9th day of *October*, the said court convening at half-past one o'clock in the afternoon of said day. The defendant was in consultation during a part of said afternoon of the 9th with his counsel. He had ample opportunity for making the application for a change of venue on that day, and could have done so as well as on the 10th. The cause was called for trial on the 9th, and was passed over until the morning of the 10th, at the request of counsel for the defendant, because of the absence of some of the defendant's witnesses. The counsel of defendant, before the said 9th day of *October*, and during all of said day, had actual notice of the rule above set out."

The application for the change was refused only because it was not made in time under the said rule of court. The bill of exceptions contains a further statement in relation to an effort by the parties, by the consent of the presiding judge, to agree upon a member of the bar of said court to preside as "judge *pro tem.*" during said trial, and also a number of affidavits filed by the defendant's counsel after the change of venue had been refused by the court, but which are unimportant to the decision of the question involved.

It is insisted by the appellant's counsel that it was the imperative duty of the court, under the statute, to grant the change of venue for the cause stated in the affidavit; that the statute does not limit the time within which the application shall be made, and therefore that it is the right of the accused to make it at any time before the commencement

of the trial, and that the rule of the court abridging such right is inconsistent with the statute, and void. The statute regulating changes of venue in criminal cases provides that the defendant may show to the court by affidavit that he cannot receive a fair trial owing to the prejudice of the judge, &c. 2 G. & H., § 76, p. 406. And section 77 of the same act, as amended in 1865 (see Acts Spec. Sess. 1865, p. 158), provides that, "When the objection is to the judge of the circuit court, any other circuit judge, or judge of the common pleas, may hold the court and try the cause."

It has been repeatedly held, under this statute, that an application for a change of venue on account of the alleged prejudice of the presiding judge, when properly made, is imperative, and is not addressed to the discretion of the court. But section 14th of the act "providing for the organization of circuit courts," &c., "and defining their powers and duties," makes it the duty of said courts to "adopt rules for conducting the business therein, not repugnant to the laws of this State, and in everything relating to simplifying and expediting the proceedings and decision of causes, presenting distinctly the points in issue in trials by jury, diminishing costs, and remedying imperfections that may be found to exist in the practice, the rules of such court shall be in conformity with those prescribed by the Supreme Court on the same subject." 2 G. & H. 8. The rule of the court, copied above, though a rigid one, we do not think is repugnant to the statute. It does not deny the right of the party to demand a change of venue for the causes specified in the statute, but only limits the time in the progress of the cause in which the application must be made, in reference to which the statute is silent.

The object of the legislature in requiring a change of venue upon the affidavit of the defendant, that he believes he cannot receive a fair trial on account of the prejudice of the presiding judge, was doubtless the humane one of leaving no apparent ground of complaint, in case of conviction, against the fairness and impartiality of the judge

who presided at the trial. But the statute is subject to great abuse. The application is too often used, not as a means of procuring a fair trial, but to delay and put it off, with the hope of wearing out the prosecution by procrastination, or that the State may not be able at another time to procure the attendance of all the material witnesses. The statute being imperative, renders it the more liable to abuse. However apparent it may be that there is no foundation in fact for the charge of prejudice against the judge, he is left without discretion. If the opinion of the judge be known, from his previous rulings in other cases, or otherwise, upon some question of law, which it may be the interest of the defendant, on the trial, to controvert, it would afford no ground for a change of venue, but as the defendant is not required to state the reasons for his belief that the judge is prejudiced against him, or the evidence upon which it is founded, he has only to denominate such opinion in his affidavit a prejudice, and thereby procure a change of venue. Such a practice, we have reason to believe, is quite prevalent in such cases. Indeed, the record before us is not without evidence that such may have been the only foundation for the affidavit in this case.

The affidavit states that the judge is prejudiced against the defendant "and his defense." The latter clause contains no statutory reason for a change of venue; and, indeed, it is difficult to perceive how the judge could have entertained prejudice against the defense. It may also be remarked that every ruling made by the judge in the case, prior to the time the affidavit was filed, was in favor of the defendant. He granted the defendant a change of venue from *Jennings* county, on an application addressed to his sound discretion, and when the cause was called for trial in the *Jefferson* Circuit Court, on the 9th of *October*, it was continued over to the following day upon the suggestion of the defendant's counsel, without an affidavit, that some of his witnesses were absent.

In view of the abuses to which the statute is liable, we cannot say that the rule of the court referred to is an unreasonable one, in conducting the business of the court as to changes of venue, and in "remedying the imperfections that may be found to exist in the practice" in relation thereto.

2. The next question in the case arises upon a ruling of the court, on the trial of the cause, in permitting a certified transcript of a certain record to be read in evidence to the jury over the defendant's objection.

It was claimed by the prosecution that *James Redman*, a brother of the defendant, was on trial in the *Jennings* Circuit Court on an indictment for larceny, and that at the conclusion of said trial, and immediately after the jury returned into court a verdict of guilty, said *James* escaped from the court room, by the assistance of the defendant, and ran some distance before he was apprehended; that the defendant was with him, and the deputy sheriff of the county and the bailiff of the court pursued them, for the purpose of capturing said *James*, and called on one *Hinchman* to assist in said capture, and whilst he was engaged therein, and when near to them, the defendant, *John Redman*, for the purpose of preventing the capture of *James*, fired several shots at *Hinchman*, with intent to kill and murder him.   The transcript of the record of the indictment and of the proceedings thereon against said *James Redman* was offered in evidence for the purpose of proving, as far as it might, the fact of said trial and the right of the officer and others acting by his command to make said arrest.   The transcript contained a record of the indictment and of the proceedings thereon up to and including the verdict of the jury.   It was certified by the clerk of the *Jennings* Circuit Court to be "a true and complete copy of the proceedings of said court," in said cause, "from the finding of the indictment to the verdict of the jury inclusive," as appeared of record in his office.   The defendant objected to its being read in evidence for the reasons:

"First. That the certificate of the clerk to said transcript is insufficient.

"Second. There is no judgment of conviction in said transcript, and the same is incomplete.

"Third. Said evidence is irrelevant."

We think there was no error in admitting the transcript in evidence. If the theory of the prosecution was correct, that *James Redman*, the defendant therein, attempted to escape from custody, at or before the return of the verdict in the case, and before final judgment was rendered, and the defendant in this case committed the offense charged against him, while attempting to aid in said escape, the judgment of the court on the verdict of the jury, rendered after the time of such attempted escape, would be irrelevant and unnecessary. The transcript was proper evidence to show the pendency of that prosecution, the appearance of *James* thereto and his presence in the court during the trial, and that he was found guilty by the jury. It does not show that *James Redman* was in the actual custody of the officer, nor does it prove that he escaped or attempted to do so, but these facts might be proved by other evidence.

3. It appears by a bill of exceptions, that during the cross-examination of one of the state's witnesses, Mr. *Harrington*, one of the defendant's attorneys, who was conducting the cross-examination, asked the witness a question which the court deemed improper, and suggested that fact to the attorney, to which he replied, in what the court regarded an "undignified and unprofessional manner:" "This is a cross-examination, and if we cannot examine our witness he can stand aside." At the close of the examination in chief of the next witness introduced by the prosecution, the court directed Mr. *Devore*, another one of the defendant's attorneys, to cross-examine him, which he declined to do. It was thereupon demanded that Mr. *Harrington* be permitted to cross-examine said witness, and it was offered to prove by the witness, on a cross-examination to be conducted by Mr. *Harrington*, "that before the defendant fired

a shot, he was struck with a large stone in the back, upon the spinal column, and that he was shot at with pistols and shot guns and wounded therewith. Also, that the defendant did not fire at the complaining witness.", The evidence was objected to by the prosecution, on the ground that the matters so proposed to be proved were not proper or pertinent to the matters testified of by said witness on his examination in chief. The court refused to permit Mr. *Harrington* to cross-examine the witness, but offered to allow the defendant or either of his other attorneys (there being three in all) to cross-examine the witness fully as to the matters so proposed to be proved, which they declined to do. The judge then proposed to ask the witness the proper questions in relation to said matters, to which the defendant objected, and refused to have the witness cross-examined unless such examination was conducted by Mr. *Harrington*, which the court refused to permit.

It is the duty of an attorney to abstain from all offensive personality, and to maintain the respect that is due to the court. 2 G. & H. 327. To protect itself against a violation of these duties, as well as against a contempt of its authority, is a necessary incidental power of a court of justice, intrusted to it for the preservation of its respectability and independence. *The State* v. *Tipton*, 1 Blackf. 166; *Brown* v. *Brown*, 4 Ind. 627.

The remark made by the attorney in this case might readily be construed as a direct reflection upon the impartiality of the court, and was so understood. It was out of place, uncalled for, and neither justified or excused by the ruling of the court, and when notified that it was regarded as offensive, no disclaimer of such an intention was made by the attorney. We think the facts clearly justified the action of the court. It is equally apparent from the record, that the proffered cross-examination was only made for the purpose of raising a question upon the record, without any expectation of proving the alleged facts by the witness, as, on his examination in chief, the witness testified

that he did not see the defendant until after he had passed beyond the place where the firing occurred. Besides, the questions proposed did not relate to any matter testified of by the witness, and was therefore improper on cross-examination.

4. The court limited the counsel to two hours on each side in their arguments to the jury. This is also complained of. It is the right of the defendant to be heard by counsel in his defense for a reasonable length of time, but we find nothing in the record of the case indicating that the time allowed by the court was not such. An exception was taken to a limit being fixed by the court, but it does not appear that the defendant's counsel either requested or desired to occupy more time than was so allowed by the court.

A bill of exceptions contains the evidence given on the trial of the cause. We have carefully examined it, and find that it contains no proof whatever that *James Redman* was in the custody of the sheriff at the time of the alleged escape, nor that the sheriff had any writ or other authority authorizing him to make an arrest; while it clearly appears from the evidence that *Hinchman*, the prosecuting witness, was in pursuit of the defendant and his brother, and when near to them, hit the defendant in the back with a stone, when the latter fired over his shoulder at *Hinchman* as he was running, and that he did not shoot at him until after *Hinchman* struck him in the back with a stone. In this connection, the court charged the jury that although *James Redman* may have been on bail, yet if he had been tried for the felony, and a verdict of guilty returned against him by the jury, and then to avoid the effect of the verdict of the jury, in case judgment should be rendered thereon against him, he attempted to escape, though his recognizance might thereby be subject to forfeiture, the escape would be unlawful, and the officers of the law had a right to arrest him, and any person assisting him in the escape would be guilty of an unlawful act.

This charge, we think, was clearly erroneous. If *James*

*Redman* was on bail, the mere fact that the jury had returned a verdict of guilty against him did not terminate his right to his liberty and place him in the custody of the sheriff, or other officer, or give to the officers any right or power to arrest or imprison him.

It is not our purpose here to deny or determine the question of the power of the court upon the return of a verdict convicting a defendant of a felony to order him into custody, if present in court, or if not, to direct a writ to be issued for his arrest, before judgment; but, in the absence of such an order or writ, it was unlawful for the officer to make the arrest. It follows that the defendant, under such circumstances, might lawfully aid his brother in getting away; and if, in doing so, he was assaulted by the prosecuting witness, he might use all reasonable force necessary to defend himself against such assault. We do not think the evidence justified the conviction, and can but suppose that the jury was misled by the erroneous charge of the court.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*H. W. Harrington* and *C. A. Korbley*, for appellant.

*D. E. Williamson*, Attorney General, for the State.