SWANSON-NUNN REALTY CO., INC. *v.* GENTRY.

[No. 19,586. Filed December 6, 1962. Rehearing denied January 3, 1963. Transfer denied May 10, 1963.]

*Herman L. McCray, Gaylon L. Clark, Jr., Ruth E. Maier* and *McCray & Clark,* all of Evansville, for appellant.

*Sydney L. Berger, Lockyear & Lockyear, Theodore Lockyear, Jr.,* and *Thomas Lockyear,* all of Evansville, for appellee.

KELLEY, J.—Appellee's complaint in this action against appellant alleged in material part that he and his father were partners engaged in the business of "steeple-jacking"; that on or about December 12, 1957, appellee's partner "approached" appellant "for the purpose of securing employment for removing portions of a smoke-stack . . . owned" by appellant;

that appellant, by its agent, servant and employee, agreed that appellee and his said partner could undertake the job of removing the smoke-stack to a height specified by appellant and point the remaining portions thereof; that in consideration of the performance of said job by said partners appellant "would pay" them $160.00 and "would acquire insurance providing benefits equivalent to the benefits provided by workmen's compensation insurance to cover" said partners while working on said job; that on December 19, 1957, "in consideration of the foregoing premises," said partners proceeded with the work and on December 21, 1957, appellee fell and sustained serious injuries; that after the accident appellee learned for the first time that appellant had not obtained the insurance and refuses to pay appellee benefits equivalent to workmen's compensation insurance benefits to which appellee would have been entitled had appellant "fulfilled its promise" to obtain such insurance; that appellee had been damaged in certain stated amounts as a result of said accident for which he prayed judgment.

Appellant answered the complaint under the rules and by second paragraph of answer alleged that on December 19, 1957 the parties "entered into a written contract" for the performance of the work, a copy of which said written contract is attached to the answer and made a part thereof as Exhibit A; that said written contract contains no provision that appellant would acquire said insurance covering said partners while working on the job.

In material substance said written contract, as appears in appellant's brief, is as follows:

THAT, WHEREAS, Noble Gentry and Jim W. Gentry are contractors desirous of performing

certain work on the premises of the Swanson-Nunn Realty Company, Inc., of Evansville, and

WHEREAS, Swanson-Nunn Realty Company, Inc., of Evansville is willing to permit them to do such work on the basis hereinafter outlined.

NOW THEREFORE, in consideration of the payment by the Swanson-Nunn Realty Company, Inc., of Evansville to Noble Gentry and Jim W. Gentry in the sum of One-Hundred Sixty Dollars ($160.00) the receipt of where of is hereby acknowledged, the said Noble Gentry and Jim W. Gentry agree to make certain repairs to smoke stack on building at 420 S. E. Eighth Street, Evansville, Indiana, such as removing portion of stack, reducing it to desired height of Swanson-Nunn Realty Company and point balance of stack as required to put same in first class condition.

Noble Gentry and Jim W. Gentry agree that they are an independent contractor and are not employees of Swanson-Nunn Realty Company, Inc., of Evansville, Indiana, and hereby hold harmless and relieve said Swanson-Nunn Realty Company, Inc., of and from any liability of any kind or character which they might or could sustain by reason of the work they have promised to do as herein stated.

IN WITNESS whereof this 19th day of December, 1957, the parties have hereunto set their hands.

| Witness | SWANSON-NUNN REALTY COMPANY, INC. |
|---|---|
| /s/ Jeanette L. Bosse | By /s/ J. M. Rushing |
| /s/ Jeanette L. Bosse | J. M. Rushing, Sec'y. |
| | Noble O. Gentry |
| | Noble Gentry |
| | James W. Gentry |
| /s/ Jeanette L. Bosse | Jim W. Gentry |

Appellee filed a reply in denial of the allegations of said second paragraph of answer. Said reply was not made under oath. Appellee filed no pleading chal-

lenging said alleged written contract for fraud, illegality, deception, mistake, uncertainty or ambiguity. Nor did appellee file any pleading or petition seeking any reformation of said alleged written contract.

Upon the issues so made, the cause went to trial by jury. Verdict for appellee followed by consistent judgment. Appellant filed motion for a new trial consisting of fifty-eight specifications, which was overruled by the court and this appeal duly followed.

In several ways appellant challenges the action of the court in admitting parol evidence of the oral contract alleged in appellee's complaint. Appellant also contests the verdict as being contrary to law in that such verdict became possible only by reason of the application by the court of the wrong principles of law to the established facts of the case.

Simply reduced, the case comes to this. The appellee pleaded an oral contract for the doing of certain work for appellant. The latter pleaded a later written contract for the doing of the said work entered into by the parties some seven days after the alleged date of the oral agreement. The two contracts, so pleaded, covered the same subject matter. The appellee in no way contests or denies the execution of the written contract. In fact, it is stipulated by the parties that the signatures appearing thereon are their signatures. No issue was presented to the court or the jury that the written contract was not made and entered into subsequent to the oral negotiations by the parties. No issue was in any way presented that the pleaded written contract was illegal, that it was entered into through fraud, mistake, misunderstanding, deception, or that it did not embody the final agreement of the parties. Appellee's reply to appellant's

second paragraph of answer, which alleged the written contract between the parties, in no way pleaded anything in avoidance of the written contract, as pleaded.

In this state of the pleadings and the issues presented thereby, the court, over the objections of the appellant, admitted parol testimony in support of the oral contract alleged upon in appellee's complaint. The admission of such evidence at the time it was offered does not appear to be error. At the point in the trial when it was introduced, said evidence was proper under the issues raised by appellee's complaint and the appellant's first paragraph of answer of admission and denial under the Rules. *Oiler and Another* v. *Gard and Another* (1864), 23 Ind. 212, on pages 216 and 217. The order of evidence introduction as shown by the record was this: Appellee's father and partner, Noble Gentry, was appellee's first witness. Following him, appellee testified for himself. Among other non-pertinent matters, they were permitted to testify, over appellant's objections, as to conversations with appellant's agent concerning the securing and doing of the work and the terms and consideration under which and for which the work was to be done. Appellee then introduced in evidence the pre-trial examination of J. Marshall Rushing, the secretary of appellant corporation, and with whom said oral conversations were had by appellee and his father. Said evidence embraced appellee's case in chief.

Appellant then introduced in evidence on its behalf the written contract pleaded in the second paragraph of its answer, and rested. Appellee gave no evidence in rebuttal. No additional evidence was offered by either side.

When the written contract, pleaded in appellant's answer and admittedly executed by the parties, was introduced and received in evidence, we think the evidence of oral negotiations, conversations and understandings by the parties except that part thereof pertaining to the time of the signing and execution of the written contract should have been disregarded and the jury so instructed. No fraud on the part of appellant leading to or entering into the execution of the written contract was pleaded or proved by the appellee. No mistake which entered into the written contract received in evidence was pleaded. No ambiguity, deception, illegality, invalidity, undue influence, nor any other matter to support any claim that the written contract was not the contract of the parties or that it did not express the consummated agreement of the parties, was alleged either in appellee's amended complaint or in his reply to appellant's answer.

As far back as *McClure* v. *Jeffrey* (1856), 8 Ind. 79, on page 83, it was said: "The rule is, that all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it, and the latter is to be treated as the *exclusive medium* of ascertaining the agreement to which the contractors bound themselves." (Emphasis supplied). Later, in *Oiler and Another* v. *Gard and Another* (1864), *supra*, the aforesaid McClure case was followed on the above quoted point and the court further said: "Parol testimony cannot be received to contradict or vary the terms of a written agreement." (Page 217).

Again, in *Rhoads* v. *Jones et al.* (1883), 92 Ind. 328, 331, 332, the Supreme Court declared:

"We think that the oral contract sued upon was merged into the foregoing written instruments. . . . His action should have been based upon said written instruments. The rule is well established that *when a contract is reduced to writing, the legal presumption is that the entire contract, as finally settled, is embraced therein* and all oral negotiations or stipulations between the parties which preceded or accompanied the execution thereof are to be regarded as merged in it, and it is to be treated as the exclusive medium of ascertaining the contract by which the parties bound themselves. (Citing cases).

"It follows, . . . that where there is a written contract between the parties, the action must be based thereon. A party can not declare upon a verbal contract and recover upon a written one. And *where he sues upon a verbal contract, and it is disclosed in the evidence that the contract was put in writing, there can be no recovery."* (Emphasis supplied). To the same effect, see: *The Johnson Harvester Company* v. *Bartley* (1882), 81 Ind. 406, 408; *Diven et al.* v. *Johnson* (1888), 117 Ind. 512, 515, 516, 518, 20 N. E. 428; *Reynolds et al.* v. *Louisville, New Albany and Chicago Railway Co. et al.* (1895), 143 Ind. 579, 614, 615, 616, 40 N. E. 410: *Wabash Railroad Company et al.* v. *Grate* (1913), 53 Ind. App. 583, 595, 102 N. E. 155.

Appellee, in support of the judgment appealed from, places emphasis on several advanced propositions. He urges, as one contention, that under his unverified reply to the second paragraph of appellant's answer, which pleaded and set forth as an exhibit thereto the said written contract, the evidence of the oral conversations and negotiations between the parties prior to the execution of the written contract was properly admitted and permitted by the court to go to the jury to show that the written contract did not embrace all that the parties had agreed to.

While we are unable to perceive the theory adopted by the court in allowing said parol testimony to be considered by the jury after the written contract went into evidence, yet to the end of complete understanding, we feel justified in giving attention to said contention.

Appellee cites and quotes from the case of *Automobile Underwriters, Inc. et al.* v. *Jeanette Camp, by next Friend, et al.* (1940), 217 Ind. 328, 28 N. E. 2d 68, 128 A. L. R. 1024, as sustaining his contention. He quotes from said case as follows:

> " 'Even if it be conceded that the proceedings herein were not proceedings supplemental to execution, appellant should have been permitted to introduce the exhibits "A" and "B" in evidence to prove that the contract alleged was not the contract entered into between the parties, and that the real contract was another and different one.
>
> " 'In an action on contract, the defendant may show, under the general denial, that the contract between the parties was a different one from that set forth in the complaint, or that the contract alleged in the complaint is invalid, or that the agreement was void, and that, in fact, no contract at all was made.' Watson's Revision of Works, Practice, and Forms, Vol. 1, §569, pp. 419, 420."

That case involved an action by the appellee to have funds due from the appellant upon a contract of automobile insurance with an insured applied to the payment of appellee's judgment against said insured. It appears that at the time of the execution of the policy and contemporaneously therewith, certain unsigned written or typed riders were pasted on the face of the policy limiting the liability and coverage of the insurer in certain respects. As these riders were not signed by the insurer as provided by the

policy, appellee claimed that there was no error in permitting her to put the policy in evidence without the said riders since the insurer did not deny the execution thereof under oath. The court held that the signing of the policy by the insurer was a signing of all the riders attached thereto at the time of the signing; that the policy provision for the signing of the endorsements applied only to changes made after the policy was delivered; that appellee did not object to appellant's offer into evidence of said riders on the ground that the execution of the policy was not denied under oath; and that if the proceeding was to be regarded as proceedings supplemental to execution, as the trial court so considered, then no answers were contemplated by the statute; the Supreme Court then said that even if the proceeding was not supplemental to execution, the riders were admissible to prove that the contract (policy) alleged in appellee's complaint was not the contract entered into by the parties. It must be noted that there was here no attempt to alter, change or modify the written policy by parol evidence.

In support of its said latter statement, the court, in said Camp case, quoted an excerpt from Watson's Revision of Works, Practice, and Forms, Vol. 1, §569, pp. 419, 420, which is included in the above referred to quotation from appellee's brief herein. Said statement in Watson's Revision of Works finds its source in *Indiana Trust Company, Executor* v. *Finitzer* (1903), 160 Ind. 647, 651, 67 N. E. 520. The last mentioned case relied upon *Jeffersonville Water Supply Company* v. *Riter et al.* (1897), 146 Ind. 521, 526, 45 N. E. 697, as sustaining its declaration. However, the Jeffersonville case made no such enunciation as is found in the said Finitzer case. The next case cited

by Watson in his Revision of Works is *Fudge* v. *Marquell* (1904), 164 Ind. 447, 456, 72 N. E. 565, 73 N. E. 895. The pertinent statement made in this case was contained in the ruling overruling a petition for rehearing. As sustaining its formal assertion, the court cites: *Gray* v. *Taylor* (1891), 2 Ind. App. 155, 28 N. E. 220; *Crum et al.* v. *Yundt* (1894), 12 Ind. App. 308, 311, 40 N. E. 79; *Baltimore and Ohio Southwestern Railway Company* v. *Ragsdale* (1895), 14 Ind. App. 406, 42 N. E. 1106; *Hamline et al.* v. *Engle* (1895), 14 Ind. App. 685, 42 N. E. 760. None of the cited cases support the statement, as made and worded in the Fudge case. The aforesaid Gray v. Taylor case simply said that "the appellees may, under the general denial, prove that the work was not done for them, but for others." The Crum v. Yundt case contains declarations quite in opposition to the statement made in the said Fudge v. Marquell case.

Likewise, the court in the cited Baltimore R. Co. v. Ragsdale case, firmly held that "if the shipper declares upon an implied contract, or the common law liability, and it appears that the shipment was made in pursuance of a special contract or bill of lading, he must fail. . . . *and it would be the duty of the court to instruct or find for the defendant.* . . . The moment it was made to appear that there was a special contract the plaintiff would have been defeated without reference as to whether he had complied with these stipulations." (Emphasis supplied.) The said Hamline v. Engle case held only that in an action by the landlord against a hold over tenant all defenses, by statute, are available without answer.

The final authority cited by Watson in his Revision of Works on the point quoted above is the case of *Weaver* v. *Brown et al.* (1912), 51 Ind. App. 379, 384,

99 N. E. 825. In that case a sub-contractor brought action against the property owner to recover for work he performed in a brick building under his contract with the general contractor. In his complaint *he not only pleaded performance by him of all the conditions of the contract but made specific averments showing that the original contract had been modified by the parties* so that a "considerable item" of the work had been omitted and not performed by him. The court, in effect, held that under appellee's general denial to such a complaint, it was proper for him to show *his version of the modification agreement,* including the amount fixed or agreed on to be deducted from the contract price. It appears, also, that the work eliminated from the contract was by "mutual consent" and that "the point in dispute in this action *is the amount* which should be deducted from the original contract price for this omitted work." (Emphasis supplied). No such holding was made as is stated by Watson in his Revision of Works.

We have devoted much time and industry and, perhaps, wearied the reader, to trace Watson's statement to its source because we were somewhat startled and afflicted with confusion at appellee's undoubtedly sincere thesis to the effect that the quotation from Watson's Revision of works made by the court in *Automobile Underwriters, Inc.* v. *Camp, supra,* has done away with the long held and oft repeated judicial doctrine in this state that in the absence of issues appropriately made of fraud, mistake, undue influence, or other substantive matter, which entered into the making, execution or content of the written contract, parol testimony can not be received to contradict or vary the terms of a written agreement or provide the foundation for re-

covery upon an alleged oral understanding later reduced to writing. We find nothing in any of the authorities which indicates the abrogation of said long recognized rule.

It seems logical, of course, that a contract that is invalid or void may be challenged under the general denial for such is not and cannot be an enforceable agreement. It is no contract at all.

Also, there may take place such occurrences or circumstances as to result in a contract between the parties which is not the kind or character of contract sued upon in the complaint. For instance, in the case at bar, the complaint alleges upon an oral contract which, in fact, was a written contract and such fact of the written instrument could have been established under the first paragraph of appellant's answer. However, this is not to say, nor do we so understand, that an agreement reduced to writing by the parties can be contradicted, altered or changed by parol evidence upon the general denial. And this for the reason that when a contract is reduced to writing, a "legal presumption" exists that the writing embraces the entire contract and in the absence of a special plea of fraud, mistake, illegality, etc., it is to be treated as the "exclusive" medium of ascertaining the contract of the parties. See *Rhoads* v. *Jones et al.*, supra; *Friedman et al.* v. *Citizens Natural Gas, Oil and Water Company* (1925), 82 Ind. App. 667, 671, 672, point 2, 147 N. E. 294.

The only theory we can conceive upon which the trial court permitted the parol evidence as to the oral contract to remain with the jury, after appellant adduced in evidence the written contract subsequently entered into by the parties, was that urged by appellee, viz: that such evidence is

competent if the expressed consideration is merely a recital and not contractual. Appellee says in his brief: "The court concluded that the consideration expressed in this contract was not contractual but merely a recital of the amount of the consideration, and that such consideration might be varied by parol evidence." Here, again, we must observe that as appellee's action was predicated upon an oral contract only, he may not recover upon the written contract by the mere device of introducing oral evidence tending to show that the consideration expressed in the written contract was not the entire consideration agreed upon by the parties.

Notwithstanding our last observation, we feel it appropriate to further examine appellee's proposals. In support of the position which appellee states the court assumed, appellee cites, as establishing the test of whether a contractual statement of consideration is contractual or a recital, the case of *Indianapolis Union Railway Company* v. *Houlihan* (1901), 157 Ind. 494, 60 N. E. 943. Appellee says that the court in the last cited case "pointed out that consideration is only contractual when it contains a promise to do something." He further says that in the herein written contract "appellant did not promise to do anything."

However, it is clear that by the written contract here involved the appellant did promise to do something. The contract states that appellee and Noble Gentry are contractors *"desirous* of performing certain work *on the premises"* of appellant, and that the latter "is willing to *permit them* to do such work *on the basis hereinafter outlined."* (Emphasis supplied). The appellant's financial obligation and the work to be done by the contractors is then stated. It seems to us that the consideration

mentioned in said contract is mutual and consists not only of the recital as to the cash amount appellant became thereby obligated to pay the contractors, but, expresses, also, the permission by appellant for said contractors to do the work on appellant's premises in satisfaction of the expressed desire of the contractors. Thus it seems evident that by the said written contract appellant did agree and promise to do something and that the written contract expressed a consideration which was not "merely . . . a recital of a precedent or contemporaneous fact." (Quotation from the aforecited Houlihan case).

The above cited case of *Friedman* v. *Citizens, etc. Water Co.* (82 Ind. App. 667), *supra,* seems to very adequately and clearly state the general rule and its limitation which is particularly applicable to the contract here considered:

> ". . . while it is the general rule that the consideration expressed in a writing may be varied or contradicted by parol evidence, (citing cases), such rule has its limitation in that *where the contract is complete on its face, a stipulation as to the consideration becomes contractual,* and the ordinary rule with reference to the effect that parol testimony cannot be received to vary, contradict, or add to, the terms of a written contract prevails, and under such circumstances, the consideration expressed cannot be varied by parol any more than any other portion of the written contract. (Citing cases)." (Emphasis supplied).

We stand convinced that the complete consideration expressed in the instrument before us is contractual and not a mere recital, and that the same was not subject to be varied or contradicted by parol evidence. *Indianapolis Union Railway Company* v. *Houlihan, supra.* The additional cases referred to

by appellee on the present point involved receipts and releases from liability and are not considered applicable or of governing influence in this case. Appellee further cites, as sustaining his position, "13 I. L. E., *Evidence,* §186, p. 67; Handbook on Indiana Evidence (Bobbs-Merrill, 1961) p. 192."

However both of said cited references in effect, do no more than to express the rule and its application much as has already been stated above. The I. L. Ency. reference cites and quotes the same statement from the *Friedman* v. *Citizens, etc., Water Co., supra,* case as we have heretofore quoted. In fact, the case of *Irwin* v. *Lee* (1870), 34 Ind. 319, cited in note 12 on page 72 of said 13 I. L. Ency., is somewhat similar in ultimate factual consequence and apropos in legal principle to the situation here existing. There, it appears the appellee sought by mandate to compel the president of a turnpike company to issue appellee a pass for himself and family over the road which, he alleged, the agents of the company promised him as an inducement for his subscription to the capital stock of the company. The written instrument of subscription was pleaded by the defendant with averment that appellee had not paid his subscription. The reply was a general denial. The trial court admitted parol evidence of the agreement with reference to the issuing of the pass. This was held to be error. The court said, in part:

"To allow the plaintiff to show by parol that at the time the written contract was made, there was a stipulation, on the part of the company, in addition to what was put in the writing, would, in our opinion, violate the well known and well established rule that evidence of parol contemporaneous agreements, by which the written contract between the parties would be contra-

dicted, or something added to or taken from it, cannot be received."

The said Handbook on Indiana Evidence very carefully and, we think, in an accurately concise manner, states the meaning of the expression "contractual consideration" found in the Indiana cases. The pertinent statement is found on page 193 in this wise:

> "If the consideration expressed in the writing *is in the form of a promise or agreement to engage in specified conduct*—a contractual act— the terms of the writing will be controlling. In such case the parol evidence rule will apply to the same extent that it would apply to any other material part of the agreement." (Our emphasis).

Appellee urges, also, that since the evidence shows that not all of the monetary figure of $160.00 recited by the written contract as having been paid appellee by appellant, was, in fact, paid to appellee, that such fact establishes that the document "is admittedly in part false" and "was not the contract between the parties." However, it is obvious that this contention is not well grounded. The fact that the provisions of a contract are not lived up to or complied with by one of the parties does not, of itself, lead to the conclusion that the contract is fraudulent or false or that it is not the contract between the parties. The said contention by appellee places him in the anomalous position of endeavoring to rely on appellant's failure to perform the provisions of a written contract which appellee asserts was not the contract between the parties. In other words, appellee, in effect, asserts that because appellant, in fact, had failed to perform one of the provisions of the pleaded written contract, such failure

may be accepted as evidence that no such contract existed between them. We are not impressed that the failure of the appellant to comply with a provision of the written contract is, of itself, evidence that the parties did not intend to enter into the written contract or that such written contract was fraudulent or false when entered into. By the written contract appellee stated that he acknowledged the receipt of $160.00. Now, if he had not, in fact, actually received the sum he acknowledged as paid to him, then he was not obligated to sign the contract and he could have refused to enter upon the work until it . was paid. In any event, however, such fact is not evidence, of itself, to sustain a claim that no written contract was made.

Appellee, nevertheless, insists that the appellant did no more than to introduce the written contract in evidence and that there was no evidence to prove that the written contract was the contract between the parties. Therefore, appellee says, it was within the province of the jury to decide whether the parties were bound by the oral contract or the written contract. In this connection we are confronted with appellee's rather novel contention that he does not deny signing the written contract but that it "is not the contract between the parties." Appellee's basic argument in support of this point is that inasmuch as appellant simply introduced the written contract, the signing of which had been stipulated by appellee, into evidence and rested, there is no evidence that it was the contract between the parties.

As stated above, Noble O. Gentry, father and partner of appellee, was the latter's first witness. He testified to oral conversations with appellant's secretary, J. Marshall Rushing, concerning the doing of work

on the smokestack of appellant's building. Referring to the written contract (which at that time had not been put into evidence) he said that he "did not read the contract, but that he signed it, and Jim (appellee) signed it"; that "he did not know when he signed the paper, but that *it was after he had made the agreement with Mr. Rushing to do the job at a certain price.*" The appellee next testified and he said, concerning the written contract, that "his dad (said Noble Gentry) came and got him, and then he went in and Mr. Rushing asked him to sign the paper; . . . that he went inside the building into Mr. Rushing's office where Mr. Rushing and Mr. Rushing's secretary and his dad and he were present. Mr. Rushing asked him to sign the paper; said that his dad had already signed it, and everything was O.K.; that it was all right to go to work, and so he signed it, and then Mr. Rushing had his secretary, or whatever she was, to sign it; . . . that he looked at the paper, read a little of it, but couldn't understand all the big words . . . ." Appellee then put in evidence the pretrial examination of appellant's secretary, said J. Marshall Rushing. He said, as bearing on the execution of the written agreement, that "he (Noble Gentry) was told to come back the next day, and the agreement would be typed up. . . . Mrs. Bosse typed up the agreement and handed it to Mr. Gentry; that both Noble and James came in the office and were given the agreement and told to read the agreement and see if it was satisfactory; that he read the agreement, and signed it, and Mrs. Bosse witnessed it, and that was the extent of the conversation, . . . that this was on the 19th and that Mr. Rushing had no notes on the time, but was pretty sure it was during the month of December." (The foregoing quoted testi-

mony is taken from appellant's condensed recital of the evidence to which no objection is taken by appellee. The emphases are ours).

It is clear from the foregoing testimony that (1) appellee and his father signed and entered into the written agreement; (2) the subject matter of said written agreement was the work to be done by appellee and his father for appellant and the compensation to be paid therefor; (3) it was made and entered into "after he (Noble Gentry) had made the agreement (oral) with Mr. Rushing to do the job at a certain price." (Quoted from testimony of Noble Gentry). Although appellee states that appellant gave no evidence to show that said written contract was the contract between the parties, it is difficult to perceive what additional evidence appellee may have in mind as being necessary to establish the written contract as the agreement finally entered into by the parties.

Appellee persists, however, that the testimony introduced by him is uncontradicted and, therefore, the oral agreement was "as testified to" and, since the jury found for him, it must be concluded that the jury found the oral contract to be the prevailing agreement between the parties. This insistence, though, does not seem to reach the heart of the problem. The heart of the question arises out of the issues made and presented for trial by the parties. The appellee sued upon an oral agreement with appellant which, appellee alleged, was breached by appellant in that the latter failed to obtain certain insurance for the protection of appellee "if he was injured" while working on the job, which appellant, by the oral agreement, had agreed to procure. The appellant answered that the parties had entered into a written agree-

ment for the doing of the work and that said written agreement contained no provision that appellant would acquire the insurance. No affirmative relief was sought by said answer. In short, appellee alleged the breach of an oral contract, appellant alleged the contract was in writing and, therefore, appellee should take nothing by his action on an oral contract.

Now, under said issues, the only evidence required to sustain appellant's said answer was that there existed a written contract between the parties for the doing by appellee of the work on appellant's premises and the amount to be paid therefor by appellant, which contract was executed subsequent to appellee's alleged oral agreement, and contained no provision for the procurance of insurance by appellant. Appellant put the written contract in evidence. The execution of the written contract was stipulated and the evidence established that it was executed subsequent to the oral conversations and transactions between the parties. On its face the written contract disclosed the date thereof; it provided for the doing of the work by appellee on appellant's premises; it stipulated the amount to be paid appellee for the work; and it contained no provision for the insurance. Appellant thereby maintained the allegations of his answer. What necessary additional proof would appellee have the appellant to make? He does not say! We cannot conjecture.

Appellee put in no evidence to obviate the written contract; no evidence that the written contract resulted from fraud, mistake, deception, undue influence or illegal purpose. We have already discussed and concluded that the written contract expressed mutual promises to "engage in specified conduct": (Handbook on Indiana Evidence, *supra*)

and that the expressed consideration was contractual, not merely a recital. It follows that, in our opinion, the court should not have permitted the jury to consider the parol evidence of the prior conversations and transactions between the parties leading to the execution of the said written contract which parol evidence would have the effect of altering, changing, modifying or adding to the provisions of the written contract. Upon the record presented here, the only basis, it seems to us, upon which the jury could have found for appellee on his complaint was that the jury ignored the written contract and reached its verdict upon oral evidence that it was improperly allowed to consider.

> "To permit parties to substitute oral statements for written stipulations would render written instruments valueless, and leave to the uncertainty of human memory the terms of contracts. This would defeat the chief purpose of a written instrument, which is to furnish certain, reliable and permanent evidence of the contract. Where parties commit their contract to writing, by that writing they must stand, where there is neither fraud nor mistake. This must be true, or else the distinction between oral and written contracts will be utterly broken down." *Conant et al.* v. *The National State Bank of Terre Haute et al.* (1889), 121 Ind. 323, 325, 326, 22 N. E. 250.

The inescapable position of appellee in this case is that he brought action for damages by complaint for alleged breach of an oral contract. In order for him to recover on that complaint, which alleged nothing regarding a written contract, he was bound to prove that appellant breached the alleged oral contract to appellee's damage. This appellee has not done. It developed in the evidence that appellee and appellant had executed and entered

into a written contract covering the subject matter alleged upon in the complaint. If it be assumed that the written contract omitted to state the full consideration agreed upon by the parties, as urged by appellee, the latter could not recover for the reason that he proceeded upon an oral contract but the evidence established a written contract. *Hall, Executor* v. *The Pennsylvania Company* (1883), 90 Ind. 459, 465; *Wabash Railroad Company et al.* v. *Grate* (1913), 53 Ind. App. 583, 595, 102 N. E. 155.

We think the court erred in overruling appellant's motion for a new trial.

Judgment reversed with instruction to sustain appellant's motion for a new trial and for further proceedings.

Bierly, Gonas and Pfaff, JJ., concur.

NOTE.—Reported in 186 N. E. 2d 574.