John L. GRANDE and Virginia C. Grande, Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 18625.

United States Court of Appeals, Seventh Circuit.

June 4, 1971.

Rehearing Denied July 13, 1971.

Douglas B. McFadden, John J. Dillon, Indianapolis, Ind., for plaintiffs-appellants.

Alan W. Boyd, Indianapolis, Ind., John W. Houghton, Indianapolis, Ind., for defendant-appellee; Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before SWYGERT, Chief Judge, MAJOR, Senior Circuit Judge, and KILEY, Circuit Judge.

SWYGERT, Chief Judge.

This is a diversity action for actual and punitive damages brought by the

sellers of certain commercial realty situate in Indianapolis, Indiana, against General Motors Corporation, the purchaser, on theories of breach of an alleged oral contract and of various allegedly tortious acts of defendant. The complaint was brought in four counts: Count One alleged fraud; Count Two alleged intentional interference with plaintiffs' existing business relationships; Count Three alleged breach of an oral contract; and Count Four alleged the conversion of personalty. The district court directed verdicts for the defendant at the close of all the evidence as to Counts One and Two. However, the court allowed Counts Three and Four to go to the jury. The jury thereafter announced to the court that it was hopelessly deadlocked, a mistrial was declared, and at a later date, the court granted defendant's motion for judgment notwithstanding the verdicts as to Counts Three and Four. Judgment for defendant on all four counts of the complaint was thereupon entered. We reverse the judgment of the district court as to its entry of judgment notwithstanding the verdict on Count Three (the breach of oral contract theory) and affirm its judgment in all other respects.

The chief facts upon which this action was predicated are as follows. John Grande and his wife, Virginia, operated a wholesale florist business on approximately nine acres of land located in Indianapolis in close proximity to General Motors' Allison Division plant. The Grandes' business had been in existence at that location and operated by them since 1949 and was a going concern. On August 31, 1966, they were visited at their home by one John (Jack) Griffin, a representative of General Motors' Argonaut Realty Division whom they had not previously known. Griffin indicated that General Motors was interested in acquiring the real estate upon which the Grandes operated their business. There was considerable discussion about terms of sale, and it is undisputed that the Grandes indicated that they wished to sell their then growing crops due for harvest in the spring to General Motors or to arrange the sale of the land so as to ensure that they would be able to dispose of the crops in an orderly fashion without being forced by premature disclosure of any sale of the land to sell the crops at a loss. It is also undisputed that Griffin rejected the offer of sale of the crops with the land, stating that General Motors desired only the land.

What followed then is much disputed. The Grandes contend that they explained that, because of the nature of their business in which the appearance of continuity of existence was of prime importance to insure continuity of the market for their crops, it was essential for General Motors to guarantee to the Grandes the right of first disclosure of any sale of the land or of an option to purchase the land. They further contend that Griffin thereupon entered into an oral contract with them to the effect that no announcement of any purchase of the land or the execution of an option to purchase the land would be made by General Motors prior to disclosure by the Grandes to their customers. The Grandes assert that they would not have sold General Motors the option to purchase their land on the terms of the written option had they not received these promises from Griffin with regard to disclosure rights. On the following morning, Griffin returned, and a written option to purchase the land was executed by the parties which made no mention of restrictions on disclosure of the transaction but which allowed the Grandes to remain in possession until August 1, 1967.

Thereafter, on October 19 and 21, 1966, articles appeared in the Indianapolis Star, a local newspaper, the cumulative effect of which was the disclosure of the purchase of the option to buy the Grandes' land. Disclosure of the existence of the option was the act of General Motors personnel. The Grandes protested the disclosure immediately. Subsequently, General Motors exercised the option, and the sale was closed on Janu-

ary 25, 1967. The Grandes assert that, as a result of the premature disclosure, they were unable to dispose of their crops on such terms as they would have been able to obtain in the ordinary course of business. They also assert that they suffered considerable losses as a result of thefts which they attribute to the disclosure and to the asserted encouragement by General Motors employees of conversions of their crops.

## I

The theory of Count One of plaintiffs' complaint is that Jack Griffin, being an agent of General Motors, represented to plaintiffs that no disclosure of the option transaction would be made by General Motors prior to disclosure by the Grandes and that Griffin made this representation knowing it to be false or with reckless disregard for its truthfulness with the intent of inducing plaintiffs to rely on his representation. The misrepresentation complained of thus amounts to a promise to refrain from doing an act in the future which will not support an action in tort for fraud in Indiana. As the Indiana Supreme Court has stated the law: "This court has repeatedly said that actionable fraud cannot be predicated upon a promise to do a thing in the future although there may be no intention of fulfilling the promise."[1] The district court correctly directed the entry of a verdict against plaintiffs on Count One.

## II

Count Two of plaintiffs' complaint charges that defendant intentionally interfered with the conduct of plaintiffs' business. On the facts of this case, it appears that the tort alleged in this count must be characterized as interference with a prospective economic advantage, since plaintiffs have neither pleaded nor proved the intentionally induced breach of a preexisting contract.[2] However, the elements of that tort were never pleaded nor proved. As Harper and James state the rule:

> Although there are aberrational situations in which recovery has been allowed for interference with prospective business relations or contracts by the negligent conduct of the defendant, they are definitely the rare exceptions. The wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of a contract. As has been seen, the general rule appears to be that liability for the interference even with existing contracts cannot be based on mere negligent conduct. A fortiori, the general rule denies liability for unintended, even though negligent, interference with mere prospective advantage under contracts not yet completed.[3]

Since there was no proof here of any intent on the part of the defendant to interfere with plaintiffs' business, the district court properly directed the jury's verdict for defendant under the general rule applicable to the tort pleaded in Count Two. Moreover, it is apparent that the requirements of Indiana law for proof of the tort of interference with a prospective economic advantage are considerably more stringent than the general rule discussed above.[4] We affirm the directed verdict for defendant as to Count Two.

## III

Count Three of the complaint was founded on the theory that the written option agreement of September 1, 1966 did not constitute the whole of the agreement of the parties, but rather that

1. Sachs v. Blewett, 206 Ind. 151, 156, 185 N.E. 856, 858 (1933) (citations omitted).

2. See W. Prosser, Handbook of the Law of Torts § 124 (3d ed. 1964) ; 1 F. Harper & F. James, The Law of Torts § 6.11 (1956).

3. 1 F. Harper & F. James, The Law of Torts § 6.11, at 513 (1956).

4. Zeller v. Mesker, 85 Ind.App. 659, 662, 155 N.E. 520, 521 (1927) ; Guethler v. Altman, 26 Ind.App. 587, 590–591, 60 N.E. 355, 356 (1901).

document was intended and understood by the parties to be merely a partial integration of their agreement. The Grandes contend that the portion of their agreement not included in the writing relates solely to an agreement by General Motors not to disclose the fact of the option or the subsequent sale of the realty until the Grandes had first disclosed those facts to their customers in such fashion and at such time as to avoid loss of the usual market for their crops. They argue further that such an oral contract is of the kind which might in the normal course of events have been the subject of a separate parol agreement even though it relates tangentially to the same subject matter as the contemporaneous written option contract and that the oral agreement was in no way contradictory of the written contract. They therefore urge that the parol evidence rule as it applies in Indiana does not bar proof of the existence of the oral agreement, that they have presented a prima facie case for the existence of the oral agreement, and that, notwithstanding the hung jury below, they had the right to try again to convince a different jury of the merits of their claim.

Defendant counters with the arguments that there is no such creature as partial integration under Indiana law and that, if there were, this is not a partial integration situation because the written agreement appears to be complete on its face and because the purported parol agreement is inconsistent with the terms of the integration. As factual support for the latter contention, defendant points to a provision in the written option which required the deed and the separate agreement relating to the Grandes' right to possession until August 1, 1967, both of which were to be executed upon exercise of the option, to be in recordable form with no stated limitation as to the right of the defendant to record both immediately upon execution. The final order of the district court is silent as to the reasons for its direction of verdict for the defendant as to Count Three, so it must be assumed that the basis for its action was that urged by defendant.

The inapplicability of the parol evidence rule to contemporaneous oral contracts of a kind that the parties might naturally have made as a separate agreement has long been recognized in Indiana. In Pea v. Pea, 35 Ind. 387 (1871), the Indiana Supreme Court considered the question whether the parol evidence rule barred the admission of evidence of an oral agreement reserving title to a movable sawmill where the oral agreement was entered into contemporaneously with the execution of a deed to the realty to which the sawmill was affixed. The court characterized the sawmill as a fixture, though an impermanent one, and held that the parol evidence rule did not bar admission of evidence of the oral agreement reserving title to the mill.[5] In Harvey v. Million, 67 Ind. 90 (1879), the court considered whether evidence of an oral agreement reserving title to crops then growing was admissible where a contemporaneous deed made no mention of any such reservation. The court again declined to bar evidence of the oral agreement.[6]

Those early decisions in Indiana have never been overruled and reflect the consensus of the commentators and the courts where the common law parol evidence rule applies.[7] That proof of contemporaneous, collateral oral agreements is not barred by the operation of the parol evidence rule is part and parcel of the rule itself if the oral agreement is not clearly merged in a contemporaneous or subsequent writing.[8] The

---

5. 35 Ind. at 398.

6. 67 Ind. at 93–94.

7. Some states, not including Indiana, have codified one or another version of the parol evidence rule which may vary results in specific situations. *E. g.*, Cal. Code of Civil Proc. § 1856 (West 1954).

8. Restatement of Contracts § 240(1) (b) (1932); Restatement (Second) of Contracts § 242 (Tent.Draft No. 6, 1971); 9 J. Wigmore, A Treatise on the Anglo-

Restatement of Contracts states the law thusly:

> An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and
>
> > (a) is made for separate consideration, or
> >
> > (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written agreement.[9]

■■ Reviewing the recent decisions of the Indiana courts for purposes of determining that state's precedent with regard to the application of the parol evidence rule raises serious questions as to the extent to which the rule is applied with the vigor characteristic of the older cases. Indeed, there is some question as to whether the rule has any application at all under Indiana law in situations where there is a disparity in the bargaining position or expertise of the parties.[10] However, we believe that the Indiana law on the application of the parol evidence rule is not more strict than the rule's traditional formulation as reflected in section 240(1) (b) of the Restatement of Contracts quoted above which, in our view, allows proof of the alleged contemporaneous oral agreement at issue here. That being the case, the only theory by which evidence of the existence of the alleged contemporaneous oral agreement could be barred is defendant's argument that the provision relating to GM's right immediately to record the deed and possession agreement upon exercise of the option is inconsistent with a restriction on the right of GM to disclose the transaction. We do not believe there is such an inconsistency here because the disclosure restriction could very well have meant only that no public announcement would be made by GM. If the alleged oral agreement was made with that intended meaning then the parol evidence rule would not bar proof of its existence as well as its meaning.

We therefore reverse the direction of verdict as to Count Three by the district court.

## IV

■ The theory of Count Four of the complaint was that employees of defendant encouraged the conversion by others of personalty belonging to plaintiffs. At trial plaintiffs offered evidence tending to show that a GM employee had stated to third parties that they could take what they wanted from the property and that losses were subsequently suffered by thefts. However, plaintiffs offered no evidence whatever which would tend to establish a causal connection between the single statement of a single employee and the substantial losses suffered by thefts. Accordingly, the district court could properly have directed a verdict for defendant as to Count Four at the close of plaintiffs' case for failure to adduce any evidence that would tend to establish proximate cause between the alleged wrong and the injury. The directed verdict as to Count Four is affirmed.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for a new trial only as to Count Three of the complaint.

---

American System of Evidence in Trials at Common Law §§ 2430–31 (3d ed. 1940) ; C. McCormick, Handbook of the Law of Evidence § 211, at 431–33 (1954) ; 3 A. Corbin, Contracts §§ 581, 594 (1960) ; 4 S. Williston, A Treatise on the Law of Contracts §§ 633, 636–38 (3d ed., Jaeger, 1961) ; see Uniform Commercial Code § 2–202.

9. Restatement of Contracts § 240 (1932).

10. *Compare* Swanson-Nunn Realty Co. v. Gentry, 134 Ind.App. 580, 186 N.E.2d 574 (1962), *with* General Grain, Inc. v. International Harvester Co., 142 Ind.App. 12, 232 N.E.2d 616 (1968), *and* Weaver v. American Oil Co., Ind.App., 261 N.E. 2d 99 (1970).